DOTTERER, trustee, *vs.* PIKE *et al.*

[This case was argued at the last term and the decision reserved.]

1. Where the trustee of a married woman, sold her separate property to a creditor of the husband, with the assent of the wife, under a deed of trust empowering him to sell generally with such assent, and the purchaser sold for value to another, without notice in the latter that the conveyance was to pay the debt of the husband :

*Held,* that the innocent purchaser for value, without notice that the
sale was made to pay the debt of the husband, will not be disturbed
in the possession of the property by a court of equity—especially
where the possession was known to the wife, and the land improved
and no warning given by her, and where she also knew of the sale
by the sheriff made at the instance of the first purchaser, after filing
deed to the husband, to whom he had given bond to convey on pay
ment of the debt, and gave no notice of any objection thereto, but
apparently acquiesced therein.

The first purchaser, who bought the land of the wife to secure a debt
due to himself, with full knowledge of all the facts, got no title, and
will be held in equity to be trustee for the wife, and to pay her the
value of the land with interest thereon—less only the taxes he paid
thereon, and insurance, for her benefit.

Trusts.   Sales.   Title.   Husband and wife.   Before Judge
POTTLE.   Richmond Superior Court.   April Term, 1877.

On 31st December, 1862, Joseph M. Newby, in consider-
ation of love for his wife, Mary A. Newby, conveyed to
Ignatius P. Garvin, as trustee for her, a lot of land in Rich-
mond county, for her sole and separate use during her nat-
ural life, and, after her death, to such children as she may
leave living, share and share alike, with authority in her to
empower the trustee, by writing under her hand, to sell any
part, or the whole, of said trust estate, she being allowed
to dispose of any part, or the whole, of the proceeds of such
sale, or sales, or authorize her trustee to re-invest the pro-
ceeds, or any part thereof, in other property, subject to the
above trusts.

On the 6th of March, 1873, Garvin, the trustee, executed
a deed to the land to Harmon Rowley in consideration of
$1,500.00.   This deed was made in pursuance of written
authority from Mrs. Newby, who authorized her trustee to
sell the land, and to pay the full amount received to Joseph
M. Newby.

No money was paid to Garvin, trustee, but on the same
day, Joseph M. Newby gave his note to Rowley, at six
months, for fifteen hundred dollars, and Rowley paid
over to Newby twelve hundred and seventy-five dollars

and, at the same time, Rowley gave his bond for titles to Garvin, trustee, conditioned to convey back the land to the trustee upon the payment of the Newby note of fifteen hundred dollars.

The note was not paid at maturity, but Newby, on 6th September, 1873, paid Rowley one hundred and eighty dollars for extension for six months, and when this period expired he (Newby) agreed, in writing indorsed on the note, to pay two per cent. per month till the note was paid. This indorsement was made March 9, 1874.

On the 31st March, 1874, Rowley commenced suit on the note against Newby in Richmond superior court, and, on the 28th of October, 1874, recovered judgment against Newby for fifteen hundred dollars with interest thereon at two per cent. a month from the 9th March, 1874, and costs.

On the 31st October, 1874, Rowley filed in the clerk's office of the superior court of Richmond county, his deed conveying the land to Newby, which was duly recorded November 25, 1874. On the same day, Rowley had a *fi. fa.* issued founded on the judgment for fifteen hundred dollars, with interest at two per cent. per month, and on the 5th December, 1874, this *fi. fa.* was levied on the land.

The sheriff advertised the property for sale under this *fi. fa.* This advertisement described the property, and set out the title to Joseph M. Newby, the title from Newby to Garvin, trustee of Mrs. Mary A. Newby, from Garvin, trustee, to Rowley, the bond for titles from Rowley to Newby, and the deed in accordance with the statute.

On the 5th of January, 1875, in pursuance of the advertisement, the land was sold and knocked down to Rowley for fifteen hundred dollars. Newby and Pike were present at the sale, and Pike bid for the same; eleven days thereafter, Rowley sold his bid to Frederick W. Pike, for his wife, Ellen Pike, for twenty-three hundred dollars, and executed a transfer thereof.

Thereupon the sheriff conveyed the land to Mrs. Ellen

Pike, by deed dated January 5, 1875, and on the 19th of January, Pike and his wife moved on the land, and took possession of the same. Mrs. Newby was allowed by them to remain until she could move. Pike proceeded to repair the fences, etc., began preparations to cultivate the place, in which he expended money.

On the 11th February, 1875, Dotterer, who had succeeded Garvin as trustee, and Mrs. Newby, filed a bill in equity praying that the Pikes be enjoined from cutting the shade and ornamental trees and shrubbery on the place, averring that the conveyance by Garvin, trustee, to Rowley was merely a mortgage of Mrs. Newby's property to secure the debt of her husband; that the sale by the sheriff, and his deed, were null and void, and asking that the deed held by Mrs. Pike be delivered up to be canceled, and the property restored to her with mesne profits.

Defendants answered in the nature of a cross-bill, and made Rowley and Newby parties.

On the trial, questions of fact only were submitted to the jury, under the act of February 23, 1876. The insolvency of Pike and Ellen Pike were admitted.

The following are the questions propounded to the jury, and the findings thereon :

Question 1. Did the parties to the papers dated March 6, 1873, made by I. P. Garvin, trustee, to Harmon Rowley, intend that it should be a sale of the land, or a security for the loan of $1,500.00 ?

Ans.—They intended that it should be for the security of a loan of $1,500.00.

2. Did Rowley pay Garvin, trustee, or Mrs. Newby, any money or price for land as purchase money ?

Ans.—He did not.

3. Was the note of Newby to Rowley purchase money of the land, or was it a loan upon a security, and what was the security, if any ?

Ans.—The note was a loan upon a security, and the deed from Garvin to Rowley the security.

4. Was the note of Newby to Rowley a debt of Newby's individually?

Ans.—It was.

5. Was any part of the money paid by Rowley to Newby paid out for the benefit of Mrs. Newby—if so, how much, and in what way?

Ans.—Yes; the $166.00 paid on the premium of life insurance was for Mrs. Newby's benefit, and the $15.00 or $25.00 paid on taxes on the land in dispute, was also for her benefit.

6. Was the money paid by Rowley to Mrs. Newby loaned to her husband, J. M. Newby, or given to him?

Ans.—It was loaned to him.

7. Did Rowley know, or have reason to know, how Newby was to use the money? and did he know, before the sheriff's sale, how it was used?

Ans.—He knew how a portion of the money was to be used, and knew it before the sheriff's sale.

8. Was it or not the purpose of Mrs. Newby to make a contract as security for her husband, and was it known to Rowley?

Ans.—Such was her purpose, and this purpose was known to Rowley.

9. Did or not Mrs. Newby, by the contract, assume the debt of her husband to Rowley?

Ans.—She did as security.

10. Was the conveyance from Mrs. Newby, through her trustee, made to extinguish the debt of J. M. Newby to Rowley?

Ans.—It was made, not to extinguish, but to secure the debt.

11. What was the value of the land at the time of the making of the paper on the 6th of March, 1873?

Ans.—Twenty-five hundred dollars.

12. What was the yearly value of the land for rent?

Ans.—Two hundred and fifty dollars.

13. What was the value of the improvements put on the land by Mrs. Pike?

Ans.—One hundred dollars.

14. Did or did not Mr. and Mrs. Pike know before the sheriff's sale, of Newby's note to Rowley, or of the bond for titles from Rowley to Newby, or the fact that the debt was Newby's debt individually? Answer each of these questions.

Ans.—They knew of Newby's note to Rowley, and of Newby's individual indebtedness, and of a bond for titles; they had notice by the advertisement.

15. Did Mrs. Newby, or her trustee, contract to pay any sum of money to Rowley?

Ans.—They did not.

16. Did Rowley have notice, at the time of the transaction, of any intention of Newby to appropriate the money to himself?

Ans.—He did.

17. Did Rowley have notice at the time of any intention on the part of Newby, or Mrs. Newby, to use the money for payment of Mr. Newby's former debts?

Ans.—He did have such notice, and the debts were to Lewis & Co., H. Rowley, and the premium of a life policy.

18. Was Newby acting as agent for his wife with the knowledge of his wife? If so, did Rowley know it, or have reason to believe it?

Ans.—He was, and Rowley had reason to believe it.

19. Did Mrs. Newby intend to make a gift of the money to Mr. Newby, or did she pay over, or authorize her trustee to pay him, any money? If so, how much?

Ans.—She authorized her trustee to pay to Mr. Newby the proceeds from the sale of the land.

20. Did Mrs. Pike know, when she took Rowley's bid, that the paper made by Garvin, trustee, to Rowley was a a mortgage, and not a sale?

Ans.—She did not.

21. Did Mrs. Newby have notice that the property was advertised as the property of Newby? If so, did she acquiesce in the sale, and allow Mrs. Pike to go into possession?

Ans.—She did know the fact, and did acquiesce in it.

22. Did Mrs. Newby have notice of the advertisement or sale of the property, and did she acquiesce in the sale, and allow Mrs. Pike to go into possession, and did she (Mrs. Newby) know at the time that she had rights to it under the law ?

Ans.—She did have such notice, and did acquiesce in the sale, and did allow Mrs. Pike to go into possession, but she (Mrs. Newby) did not know that she had rights to it under the law.

23. Did Mr. or Mrs. Pike expend any money or labor, or both, believing, in good faith, that the land was Mrs. Pike's, and without notice of Mrs. Newby's equity ? If so, could Mrs. Newby, in the exercise of reasonable diligence, have given such notice before such expenditures?

Ans.—They did so expend, and without notice of Mrs. Newby's equity, but Mrs. Newby could not have given the notice before the expenditures.

24. Did Rowley represent to Mr. or Mrs. Pike that the title was good ? If so, did that induce, in whole or in part, the purchase ?

Ans.—He did so represent, and this did induce the purchase.

25. Did Rowley disclose to Mr. or Mrs. Pike the existence of the bond for titles from him to Garvin, trustee, or did Mr. or Mrs. Pike have notice of such bond for titles, or otherwise ?

Ans.—He did not so disclose, and Mr. and Mrs. Pike had no such notice of such bond.

26. What did Mrs. Pike pay Rowley for the land ?

Ans.—$2,300.00.

27. Was the intention of the parties to sell and buy, or to secure a loan or advance money ?

Ans.—To secure a loan.

28. Was Newby insolvent, or not, at the time when he made the conveyance to his wife in 1862 ?

Ans.—He was solvent.

29. How much money did Mr. Newby get besides the amount paid to the insurance company, and on the execution in Mr. Miller's hands for collection?

Ans.—$559.00.

Upon this the judge entered the following decree:

"The counsel for all parties having asked the court to submit questions of fact only to the jury, in accordance with the act approved February 23, 1876, entitled an act to define and regulate the practice and mode of trial in certain chancery cases in the state, and for other purposes, and the jury having found in their verdict the facts upon which they were directed by the court to pass upon in writing, it is ordered, adjudged, and decreed by the court, that the law and equity of said cause is as follows:

First. The conveyance of March 6, 1873, from I. P. Garvin, trustee, to Harmon Rowley, being a security to pay an individual debt of Joseph M. Newby, and Harmon Rowley being cognizant of that fact, said conveyance is void as to Rowley, and passed no title to him, nor did he, by it, acquire any right to the property described in the deed, namely: the land in controversy.

Second. The conveyance being void as to Rowley, the trust estate of Mrs. Newby acquired no rights under the bond for titles from Rowley to Garvin, trustee, and that obligation is void as to Mrs. Newby and Rowley.

Third. The judgment in favor of Rowley *vs.* J. M. Newby is null and void as to any liability on the trust estate of Mrs. Newby, and has no lien on the same, either in law or equity.

Fourth. The title to Mrs. Pike to the land is valid, she being an innocent purchaser, in good faith, for value, and without notice of the facts connected with the transaction between Mrs. Newby, J. M. Newby, and the trustee, Garvin, and Harmon Rowley.

Fifth. It appearing from the verdict of the jury that Newby received from Rowley $1,275.00, and, also, from the written consent of Mrs. Newby attached to the deed, that Mrs. Newby authorized the payment of the money to

Dotteror *vs.* Pike *et al.*

her husband, she ought to do equity. She claims that her act was one forbidden by law, to-wit : a securityship for her husband. The jury have found that to be true. Newby, then, her agent, receives money from Rowley without any consideration. That act is her act—good conscience requires her to pay back this money.

It is, therefore, adjudged and decreed that the whole contract was void, and that she (Mrs. Newby) must pay back the fruits of the void contract ; also, that the complainant recover of Harmon Rowley the sum of $2,500.00, the value of the land, with $250.00 per annum for rent from the 12th day of January, 1875, allowing one week for the time Mrs. Newby was in possession of the building, less $1,275.00 paid Mr. Newby by order of Mrs. Newby ; also, ordered that the costs up to the time when Rowley was made a party be paid by complainant—after that time to be paid by Rowley."

The plaintiff in error excepts to the decree, and alleges error therein as follows :

1. That the chancellor decreed that complainant must pay back to Harmon Rowley $1,275.00 before getting from him the value of the land, with rent.

2. That he decreed the title of Mrs. Pike to the land to be valid.

3. That he decreed costs against complainant to the time Rowley was made a party.

4. That he refused to decree the land to complainant, with rent from the time of the dispossession, to be paid by Harmon Rowley.

Rowley joined in the bill of exceptions, because any sum was decreed against him, and because he was not allowed interest on the sum of $1,275.00.

H. D. D. TWIGGS ; A. D. PICQUET ; J. GANAHL, for plaintiff in error.

BARNES & CUMMING ; J. C. C. BLACK ; T. H. GIBSON, for defendants.

JACKSON, Judge.

This was a case in equity, tried under the act of 1876, on which trial the jury found a special verdict in response to certain questions propounded. On this verdict the court granted a decree, and the only matter complained of is that decree.

The substance of the verdict is, that Rowley loaned Newby, the husband of Mary A. Newby, $1,500.00, to secure which Newby and wife executed to him a mortgage of the wife's land; that no money was paid for the land as purchase money; the deed to the land of Mrs. Newby was to pay the individual debt of Newby; part of Rowley's debt on Newby was $15 or $25 taxes, and $166 premium on Newby's life for the benefit of Mrs. Newby; Mrs. Newby's purpose was to contract as security for her husband, and Rowley knew it; the land was worth $2,500.00, and the rent $250.00 per annum; Rowley knew that Newby acted as agent of his wife; Mrs. Newby acquiesced in the transaction, and permitted the purchaser at sheriff's sale of the land to go into possession, but she did so in ignorance of her rights under the law; Rowley represented to Mrs. Pike that the title was good, and this representation induced the purchase; Mrs. Pike paid Rowley $2,300 for the land.

The facts disclosed by the record, as admitted in the pleadings, and found by the verdict of the jury, seem, with sufficient certainty, to be substantially these:

That Mrs. Pike was an innocent purchaser without notice; that the sale of the trustee was for the purpose of paying or securing a debt for the husband of Mrs. Newby; and that the sale to Rowley was by the trustee, and authorized by the deed, if Mrs. Newby consented thereto, which consent appeared on the face of the papers; that she bought from Rowley, paying him $2,300 for the land, taking his bid off his hands for value, he having paid but $1,500 for it; that the sheriff made her the deed, and she went into possession and improved the land, with the knowledge of

Mrs. Newby, who knew of the sheriff's sale also; that Rowley knew all about the purpose and object of the sale, having himself been the purchaser to pay his own debt owing by Newby, the husband, to him; that the value of the land was twenty-five hundred dollars; and that, of the entire proceeds thereof, but one hudred and sixty-six dollars, insu_rance premium, and twenty-five dollars, taxes, was used for the benefit of Mrs. Newby, the entire balance being applied to Newby's debt to Rowley.

The statute, Code, §1783, is in the following words:

"The wife is a *femme sole* as to her separate estate, unless controlled by the settlement. Every restriction upon her power in it must be complied with; but, while the wife may contract, she cannot bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband, and any sale of her separate estate, made to a creditor of her husband in extinguishment of his debts, shall be absolutely void."

Section 2329 of the Code is as follows:

" The purchaser from a trustee, with notice actual or constructive of the trust, holds as trustee for the beneficiaries; if the purchase be *bona fide,* and without notice, the purchaser holds the property freed from the trust."

Section 2622 requires the purchaser to " look for himself as to the title and soundness of all property sold under judicial process."

Section 2628 declares, in substance, that the purchaser at judicial sales is not responsible for the disposition of the funds, or the returns or irregularities of the sale, but is only bound to see " that the officer has competent authority to sell, end that he is apparently proceeding to sell under the prescribed forms."

Section 2640 is to the effect, that " though a title obtained by fraud be voidable in the vendee, it will be protected in a *bona fide* purchaser without notice."

Section 3092 declares that " a *bona fide* purchaser for

value, and without notice of an equity, will not be inter-
fered with by a court of equity."

Section 2633 enacts that fraud *voids* a sale where consent
is obtained by it; and section 2751 enacts that fraud *voids*
all contracts.

We think that these sections of the Code all have a bear-
ing upon the decree proper to be rendered in the case made
by the admissions in the pleadings and the findings of the
jury.

The language of section 1783 is very strong. A sale of
the wife's separate estate made to a creditor of the husband
to extinguish his debt, is declared to be *absolutely void*.

As between Rowley, the creditor of the husband, and
Mrs. Newby, the sale is clearly void; and if Rowley held
the land, the deed to him would be set aside, and the land
restored to Mrs. Newby, beyond all cavil or question. But
it has passed out of his hands, and is in the possession of
Mrs. Pike under a purchase for value from Rowley, with-
out notice to her that the sale was to pay Newby's debts;
and the question arises as between Mrs. Newby and Mrs.
Pike, will a court of equity interfere to relieve Mrs. Newby
when Mrs. Pike is an innocent purchaser? Section 3092
would seem to forbid such interference, for Mrs. Newby's
title is an equitable one; the legal title was in the trustee;
the trustee sold pursuant to the deed of trust by Mrs. New-
by's assent thereto; and if the sale, though not made to her
directly by the trustee, came to her from Rowley, who
bought from him, and she believed that it was all right, she
certainly ought to be protected, and equity ought not to
disturb her possession.

While the sheriff made the deed to Mrs. Pike, she cannot
be said to be exactly a purchaser at a judicial sale; for,
though she bought the bid of Rowley, she did not take it
off his hands at the same price he gave, but paid very nearly
the full value of the land—eight hundred dollars more than
he gave for it. If she had been the actual purchaser at the
sale, under section 2622, which requires such purchaser to
look to the title of the property for himself, it is possible

that she would have acquired no title, as it was sold as Newby's property, the deed being made to him by Rowley under the bond for titles; but even then, if innocent, under section 2628, she need not have looked to see how the money she paid was applied. The officer had authority to sell, the thing looked fair, the title apparently passed out of the trustee of Mrs. Newby into Rowley, and from him to Newby, and seemed all regular.

If she had bought directly from the trustee, as Rowley did, but without any knowledge or notice that the money which she paid was to go to pay the husband's debt, then she would have been protected by section 2329 of the Code, which enacts clearly that such a purchaser holds the property freed from the trust. While Rowley held it as trustee for Mrs. Newby, because he was not innocent, but was trying to pay a debt to himself of the husband, Mrs. Pike would have taken it free from the trust, for the reason that she was innocent, and had no notice of aught that was wrong.

Now, it cannot change her rights in equity that, instead of buying from Garvin, the trustee, directly, she bought from the man to whom he had sold, all appearing right on the papers.

It is true that it seems singular, if not absurd, that a void title in one vendee can transmit to another anything valid; but the Code is explicit in sections 2633 and 2751, that fraud *voids*—which, I suppose, means makes absolutely void—all contracts, and yet a title so acquired by fraud, and void on that account, when transmitted to an innocent purchaser, without notice and for value, is made good by section 2640. It is true that the language there used is the word " voidable," which certainly makes a difference; but then the other sections, 2633 and 2751, use the word " voids," which assuredly must mean " makes void;" and yet this fraudulently *void* title transmits a *valid* one to the *bona fide* purchaser for value without notice.

But, independently of all this, we think that as between

Mrs. Pike and Mrs. Newby, the principle of an equitable estoppel may be applied.

Mrs. Newby gave her assent to the sale by her trustee of this property—she knew of the sheriff's sale of it as the property of her husband, conveyed to him by Rowley, to whom her trustee, by her consent, conveyed it under the terms of the deed of trust. She saw Mrs. Pike put in pos-session and making improvements, and yet she gave no warning. Under these facts, will not equity estop her from setting up her title against Mrs. Pike? It strikes us that it should. The Code, section 3753, gives a succinct summary of estoppels, and concludes thus: "and other admissions, upon which other parties have acted, either to their own in-jury or the benefit of the persons making the admissions, and similar cases where it would be more unjust and pro-ductive of more evil to hear the truth than to forbear in-vestigation." It seems to us that the acts of Mrs. Newby, and her omission to give notice of her title or equity, dur-ing all this time, constitute such a case, as applying the principle of the Code to it, will prevent her from setting up her equitable estate *against an innocent purchaser.* It would be more unjust to let her tell the truth about her title, as respects an innocent purchaser, than to forbear the investigation and disturb that innocent purchaser. The facts make a case where Mrs. Pike's equity is superior to that of Mrs. Newby.

The doctrine of estoppel will apply to married women in such cases. Perry on Trusts, §170.

Our own Code, in respect to the *bona fide* purchaser for value, but re-enacts the principles of equity. Perry on Trusts, §218, *et seq. ;* where it is said that such a purchaser holds the property free from the trust; and "*that equity will not disarm a purchaser, but assist him ;* and prece-dents of this nature are very ancient and numerous, viz : where the court hath refused to give any assistance against a purchaser, either to an heir, or to a widow, or to the fatherless, or to creditors, or even to one purchaser against

another;" but if he has the legal title, he may buy up any ncumbrance and defend himself at law, and equity will not harm him; and numerous cases are cited to sustain the main principle, that such a purchaser will not be disturbed by a court of equity.

So in the same book, §680, it is said, speaking of the contracts of married women, "it will be remembered that the contracts themselves were *utterly void*, but that equity gave them effect as *quasi* charges upon their separate property." Here we have equity giving effect to something "*utterly void*," because the married woman ought not to be allowed to use the exemptions and privileges which the law gives her for her protection against fraud in others or the power of her husband over her, to defraud other people.

So this court held, the other day, in the case of *Glover vs. Moore*, from Bartow, not yet reported, that her attorney could bind a married woman by a confession of judgment on terms, because she had employed him, and that the judgment concluded her, because the other side had acted upon it by giving time and not litigating the case, as they might have done but for the settlement; and this on the same principle of estoppel. And her separate estate was held subject to the judgment, though the allegation was that the debts were all her husband's.

So the Code, §119, under the chapter of "Accident and Mistake, enacts that "Equity will grant relief as between the original parties, or their privies in law, in fact, or in estate, *except bona fide purchasers for value without notice*," showing the favor that equity everywhere extends to an innocent man who honestly paid his money for property.

We think, therefore, that the court was right in decreeing, upon the verdict, that Mrs. Pike was protected, and that equity would not interfere with her title and possession of the land.

2. But in respect to Rowley, it is clear that he stands in no such attitude, and so, too, the court held; but we think that the decree does not give effect in full to the fact that

the whole trade is void as to him.  For the decree allows him to retain $1,275.00 of the money which the land brought.  We think that he is only entitled to a credit of $25.00, for taxes paid on this land, and $166.00, insurance for her benefit.  Purchasing the land from her trustee, with full knowledge of her equities, and in utter violation of the law which prohibited the sale to him to pay the debt her husband owed him, he got no title thereto, but became, and is, her trustee, and must account for the trust.

Having purchased with full notice, he became her trustee. Perry on Trusts, §217 ; Code, §2329 ; and aiding in misapplying her funds, he is responsible to her.   Code, §3151.  ·

We think, therefore, that the decree in favor of Mrs. Newby against him should be for the value of the land, as showed by the sale to Mrs. Pike, $2,300.00, with interest thereon from the 19th day of January, 1875, when Mrs. Newby was dispossessed thereof; and the decree will be modified accordingly.  To give a credit to Rowley of $1,275.00, which Newby got, and with which he paid his debts, would be to do what the statute, we think, prohibits.

The judgment is reversed upon the ground that the chancellor erred in decreeing too little to Mrs. Newby against Rowley, and affirmed in all other respects.

Judgment reversed.