## DILL *v.* HAMILTON.

</div>

Although money belonging to a wife was expended in the purchase of land to which her husband, without her knowledge or consent, took title in his own name, yet her secret equity in the land can not be successfully asserted as against another who extended credit to the husband on the faith of his ap- parent ownership of the property, took from him a mortgage thereon, and subsequently reduced to judgment the debt thus created.

<div align="center">Submitted May 6, — Decided June 3, 1903.</div>

Levy and claim. Before Judge Estes. Habersham superior court. September 3, 1902.

*J. C. Edwards*, for plaintiff.

SIMMONS, C. J. A fi. fa. in favor of Dill was levied upon cer- tain land as the property of Albert Hamilton, the defendant in ex- ecution ; and his wife, Lucinda Hamilton, interposed a claim, based upon the contention that the land had been " bought and paid for by her," and that, through mistake or accident, her husband had caused the legal title thereto to be conveyed to himself. On the trial of the issue thus formed, the claimant testified that the money with which the land was purchased had been earned by her prior to her marriage ; and in this statement she was corroborated by another witness who professed to know the truth in this regard. She fur-

ther swore: "When it was paid for, my husband, Albert Hamilton, went to have the deed made, and he had it made to himself. I don't know why he had it made that way. I never knew the deed was made to Albert till this litigation arose. I never had a deed to it; the deed has always been in my husband's name; but, as I said, I didn't tell him to have it made to him, and didn't know that he did until this litigation." The deed referred to was dated December 19, 1887, and recorded on February 15, 1888. The judgment in favor of Dill, upon which the execution issued, was obtained in 1899; the levy was made the latter part of that year, and the claim was filed in January 1901. Dill was introduced as a witness in his own behalf, and testified as follows: "On the 2d day of June, 1893, I sold Albert Hamilton a mule on a credit, and I took a mortgage on this land to secure the debt. Albert Hamilton showed me the land, and said he had a deed to it and it was his; and I extended him credit on the faith of the land. I did not know anything about his wife having paid for the land, or that she had any interest in it or claim to it, and I never heard of her having any until she filed this claim." No further evidence was introduced by either party to the case. The court below gave to the jury the following instruction: "If you believe that the claimant in this case paid for this land, the equitable title will be in her, and would not be subject; but if you believe that the plaintiff in fi. fa. extended credit to the defendant in fi. fa. upon the faith that defendant owned this land, and the claimant had knowledge of it, or had anything to do with it, then the land would be subject; but if she, the claimant, did not know of the credit being extended to defendant in fi. fa., and had nothing to do with it, the land would not be subject." The verdict returned was: "We, the jury, find in favor of the claimant." Dill made a motion for a new trial, wherein he complained that the charge of the court above quoted was erroneous, and that the verdict was contrary to law and the evidence.

It is unquestionably true, as his honor of the trial bench in effect charged, that one having a secret equity in land can not be heard to assert the same if he stood by and knowingly allowed another to act to his prejudice by extending credit to the holder of the legal title upon the faith of his apparent ownership of the land. *Kennedy* v. *Lee*, 72 *Ga.* 39. It was, however, erroneous to add that if the claimant "did not know of the credit being extended to the

defendant in fi. fa., and had nothing to do with it, the land would not be subject." It was not incumbent upon Dill to prove that the claimant was a party to the fraud perpetrated upon him. He in good faith acquired a mortgage lien on the land in 1893, when credit was extended to her husband, and therefore stood in the attitude of a bona fide purchaser for value and without notice of her equity. See *Parker* v. *Barnesville Savings Bank*, 107 *Ga.* 651, and cases cited on page 657. Regarded even as an unsecured creditor, his judgment lien on the land, acquired in 1899, was, under the undisputed facts of the case, entitled to prevail over her mere secret equity. *Zimmer* v. *Dansby*, 56 *Ga.* 79; *Gorman* v. *Wood*, 68 *Ga.* 524; *Brown* v. *West*, 70 *Ga.* 201; *Hobbs* v. *Georgia Loan Co.*, 96 *Ga.* 770. In the first of the cases last cited, this court held: "If the legal title to land be in the husband and he holds the possession thereof under such title, and the title and possession so remain until a creditor, who gave credit on the faith that the property was the husband's, without any notice of the wife's equity, reduces his debt to judgment, the lien of such judgment will bind the land and will be enforced against a secret equity of the wife, resulting from the fact that her money paid for the land." The rule is different where a wife, whose money is used in the purchase of lands the title to which is taken in the name of her husband, acquires from him a conveyance of the legal title prior to the time a creditor of the husband secures a judgment against him, notwithstanding the creditor may have extended credit on the faith of his apparent ownership; for, under such circumstances, the creditor is not in a position to assert a lien on the land as the property of the husband, unless the conduct of the wife was such as to estop her from setting up a claim to the same. *Bell* v. *Stewart*, 98 *Ga.* 669; *Dodd* v. *Bond*, 88 *Ga.* 355. But, as has been seen, this rule has no application to the facts of the present case, the claimant never having acquired the legal title to the land, and being chargeable with inexcusable laches in not sooner informing herself of the fact that her husband took title to himself, instead of having a conveyance made to her.

*Judgment reversed. By five Justices.*