### In re VICTOR.

### LANHAM v. VICTOR et al.

(District Court, N. D. Georgia, N. W. D. November 1, 1917.)

No. 884.

1. BANKRUPTCY ⟨=⟩303(3)—PROPERTY PASSING TO TRUSTEE—PROPERTY CLAIMED BY WIFE.

Evidence *held* to sustain the finding of a referee that a stock of goods in a store which for many years had been conducted in bankrupt's name, which was on the sign, and in which all goods were bought, was his property, and not that of his wife as claimed, although she had during all of the time participated in the conduct of the business, both in buying and selling.

2. APPEAL AND ERROR ⟨=⟩1017—DECISIONS OF REFEREE—REVIEW.

The decision of a referee on questions of fact will not be interfered with, unless clearly and manifestly erroneous.

In Bankruptcy. In the matter of A. Victor, bankrupt. On petition to review order of referee requiring bankrupt and his wife to deliver to H. L. Lanham, trustee, certain personal property. Order confirmed.

M. B. Eubanks and Max Meyerhardt, both of Rome, Ga., for Mrs A. Victor.

L. H. Covington, of Rome, Ga., for trustee.

Denny & Wright, of Rome, Ga., for petitioning creditors.

NEWMAN, District Judge. The referee has filed an opinion in this matter, which comes before the court with a petition to review his findings. The opinion of the referee in the case is as follows:

⟨=⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The bankrupt and his wife conjointly participated in the carrying on of the business in question, at a place of business on Broad street, Rome, Ga.; both of them co-operating in the matter of purchasing goods, wares, merchandise, and fixtures, consisting of fruits, foods dispensed as lunches to customers, drinks which were iced for sale, a refrigerator, cash register, and fixtures necessary for the conduct of the business. Both participated in the actual sales and work about the place. In every instance goods, wares, and fixtures were bought in the name of the bankrupt, A. Victor. The fixtures in some instances were bought under formal written contracts signed "A. Victor," such contracts as for a $65 McCrary refrigerator and a $313 National cash register, being certified herewith as part of the evidence. Purchases of goods were invariably receipted for in the name of A. Victor; sometimes the wife signing the name, and sometimes the bankrupt doing so, and in instances the children so receipting. The bankrupt attended to small purchases by using his name without express authority in each specific instance, with his wife's knowledge and consent; but in important matters he sought and obtained his wife's consent.

Nothing appeared at any time at the place of business to indicate claim of the ownership or interest in the business on the part of the wife. The window contained a large sign "A. Victor," painted there by the Coca-Cola Company, at the direction of A. Victor, and without objection on the part of the wife, who does not disclaim knowledge of its existence or profess objection thereto; the evidence and the manner of both on the stand indicating very strongly that it was the express desire of both for the sign to so remain. A. Victor received $75 per month for six months of the year, and only his clothes the other six months. A large amount of goods were acquired from numerous trade creditors in this course of dealing, all of which were paid independent of the bankruptcy administration. The bankrupt swears that these accounts he paid with his wife's money.

The goods involved in this proceeding, as well as all other goods and fixtures, were bought in the name of A. Victor, and on the strength of his credit entirely—his explanation being that every one knows A. Victor, and no one knows C. Victor, or words to that effect; that people knew him a hundred times better than his wife, the name of the wife never having appeared in connection with the business, in any way or at any time. The goods now in the possession of the bankrupt under these facts consist of: "A certain stock of goods and merchandise, located in the storehouse at No. 410 Broad street, in the city of Rome, Georgia, said stock of goods and merchandise consisting of fruits, candies, canned goods, and confections in general, and also fixtures located in said store, consisting of showcases, cash register, refrigerator, and other fixtures used by said bankrupt in connection with his business, conducted in said storehouse." No disputes were made as to the nature of the goods, nor its alleged value of $600; but ownership was denied by him, and asserted by bankrupt and his wife to be in his wife.

The city license issued by the municipality of Rome, Ga., for the years of 1914, 1915, and 1916, were issued to C. Victor, the wife. This was after the creation of a debt of $750 by subscription to stock of the Broadstreet Hotel Company. This company is the only creditor listed by the bankrupt in his schedules. The licenses for prior years are not in evidence; the bankrupt testifying that he kept all licenses in his safe, but did not now know where the old licenses were, his counsel stating in open court that some others were in his possession. The claim of the Broadstreet Hotel Company, based upon the second and last installment of the stock subscription, was proved and allowed by Hon. W. S. Rowell. The first installment, in like sum, had been sued to judgment in the state courts, carried to the Court of Appeals of Georgia, and the judgment of the lower court confirmed.

On application the order of the former referee was reopened, the claim considered, and the objections overruled and the claim finally allowed. This judgment of the referee was not appealed from, and is not now on review. The following facts are found as to this debt as bearing upon the main question here for review:

The subscription to the stock was taken by J. H. Lanham and E. P. Harvey, acting jointly. At the time the bankrupt, A. Victor, and wife, C. Victor, were present. The bankrupt was told in the presence of his wife that the building of the hotel would enhance property values. The bankrupt discussed the matter at some length with his wife, and the subscription was signed by A. Victor. The wife, after discussion and evident joint consideration with her husband, expressed a desire for the husband to subscribe.

The bankrupt and his wife testified at the hearing. They testify laconically that the wife always owned the business since 1912, at which time Victor had financial troubles and lost his money in New York. That the word "manager" or "agent" was never added to the invariably used business title of "A. Victor," but that in fact A. Victor always acted as agent for the wife, C. Victor. That the father of C. Victor gave her the business. That the building in which the business was run belongs to the wife, and was deeded to her by A. Victor some years prior to the bankruptcy, and was bought by A. Victor in his own name, with C. Victor's money, and transferred to her.

The bankrupt testifies, in rather categorical manner also, that the business has been run in his name, but only as agent for his wife, for some 18 years. The wife testifies in similar manner to such state of facts existing for many years, but that she only married the bankrupt some 13 years since. He explains that through mistake he listed the claim of Broadstreet Hotel Company in his schedules as Rome Hotel Company.

The stenographer's transcript of the examination of the bankrupt at the first meeting of creditors was offered in evidence and objected to because of the fact that Hon. W. S. Rowell, the referee presiding, was disqualified, and has since formally disqualified, and the matter referred to the acting referee.

This examination, while admissible to contradict the bankrupt on this hearing, and possibly in other proper cases, was held to be inadmissible, and was not considered in making any findings of fact herein reported. The transcript is transmitted, however, along with the record herein.

## Findings of Law as Applicable to Facts.

Possession of the res by the bankrupt, or any one for him not having a bona fide adverse claim at the time of the commencement of the proceedings which result in an adjudication, gives the bankruptcy court summary powers to compel its production. The question so stated is fully discussed in Collier on Bankruptcy (9th Ed.) pp. 490 to 498, and specially in numerous holdings of the federal courts; the exceptions being largely based upon comity and discretion, and usually in cases of conflict of jurisdiction between courts. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, 7 Am. Bankr. Rep. 224; Murphy v. John Hofman Co., 211 U. S. 562, 29 Sup. Ct. 154, 53 L. Ed. 327, 21 Am. Bankr. Rep. 487; In re Eppstein, 19 Am. Bankr. Rep. 89, 156 Fed. 42, 84 C. C. A. 208, 17 L. R. A. (N. S.) 465; Mound Mines Co. v. Hawthorne, 23 Am. Bankr. Rep. 242, 173 Fed. 882, 97 C. C. A. 394.

Under the Georgia law, possession by the husband and wife is presumptively that of the husband, though the presumption may be rebutted by proof. Perryman v. Morgan, 103 Ga. 555, 29 S. E. 708.

The possession in the case at bar, construing the facts most favorably to the wife, is that of a joint possession in both the husband and wife. And a summary proceeding should lie in such a case to compel relinquishment of the property, at least where the wife is unable to show anything more than a claim which on its face is patently a specious one.

Indeed, the facts smack very strongly of fraud. The remarkable business relationship, outlined by the bankrupt and his wife, of a long-continued use of the husband's name alone to buy goods on his credit, admittedly without the slightest influence from the wife's credit, the persistent concealment of the wife's alleged interest, and equally persistent publications of the husband's name in the business title, forces the conviction that the husband is, and has always been, the real owner of the property, and the wife's suddenly asserted claim, after expectancy of litigation and evidently of bankruptcy, rather

clumsy and unappealing to a court of equity, to say the least of it. Under the facts shown, the belief that the wife's claim is merely colorable is unavoidable.

Objections were interposed by Mrs. C. Victor to the jurisdiction of the court to hear and determine her rights to the property, but after submission of the case her counsel waived her personal rights in this respect in the briefs filed, and herewith returned for the use of the court, leaving only the primary question, imposed upon every court, as to jurisdiction of the subject-matter. This could hardly be doubtful, and therefore the case was considered upon its merits, and in only three respects, to wit:

"(1) Is the actual ownership of the property in the wife, or is her claim merely a fraudulent scheme, arranged between her and her husband to defraud the creditor, who credited on the strength of it and its ownership by the husband?

"(2) If the wife has any title or ownership at all, is she not a dormant or secret partner?

"(3) Under all the facts shown, should the wife be estopped from asserting title to any of the property as against the creditor, who extended credit to her husband with her knowledge and active consent?"

This is a transaction between husband and wife, and must be scrutinized closely by the trial court. The law of Georgia is mandatory in this respect, and the burden is on the husband and wife under a very strict rule of evidence. Section 3011, Code of Ga. (Park's), provides:

"When a transaction between husband and wife is attacked for fraud by the creditors of either, the onus is on the husband and wife to show that the transaction was fair."

The law and the rule for weighing the evidence is further emphasized in sections 4625 and 4626 of the same Code, to wit:

"4625. Fraud may be consummated by signs, or tricks, or through agents employed to deceive, or by any other unfair way used to cheat another, and "4626. Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence."

Out of a large number of cases handed down by the Georgia courts of last resort, reference to one of the older cases, but which is still unreversed, is helpful in determining the law of the case at bar; a land case, it is true, but applicable to a case involving personal property as well, in the light of the code provisions cited. In this case of Skellie v. James, 81 Ga. 419, 425, 8 S. E. 607, 608, the court uses the following language: "After charging that the husband and wife had a right to make contracts, one with the other, and the contracts would be good between them, he [the lower court] added: 'The only difference is that the law requires it should perhaps be looked into a little more closely.' We think, on the contrary, that in a contest between creditors of the husband on the one hand, and the wife on the other, where a fraud is charged, and where the wife sets up a secret contract between herself and her husband, as was done in this case, the jury should be instructed to scan the transaction closely, and that the bona fides thereof must be clearly established, and not that perhaps they might look into it 'a little more closely.'"

A still older unreversed case—Booher v. Worrill, 57 Ga. 235—affords a much more amplified and complete discussion of the same principles. To quote the many more recent decisions to the same effect would afford no additional weight to those cited and still the law of this state. The case of Strickland v. Jones, 131 Ga. 409, 62 S. E. 322, but reiterates the same holding, citing another older decision specially, Comer v. Allen, 72 Ga. 1.

With every effort to steel one's self against any possible "presumption" of fraud which might arise, the circumstances proven, and largely admitted by the bankrupt and his wife, are such that the conviction that the claim of the ownership in the wife is but a fraudulent artifice and scheme is in fact overpowering. It is almost impossible of belief that such a course of dealing as existed in this case through a long period of time and under such astonishing circumstances could have been simply casually arranged, and persisted in, without sinister motive.

### As to Dormant or Secret Partnership.

Under the circumstances shown in this case, the interest of the wife, if any, in the husband's business, is very closely analogous to that of a dormant partner. In fact, to so construe her relationship to the business would be the most favorable one possible in her behalf. The secret status arranged between the two is such as would place creditors in a most helpless situation, and one which a court of conscience could not tolerate. The arrangement for the wife to own the business secretly and the husband to receive $75 per month for six months, and clothing for the remainder of the year, is nothing less than a division of the profits between them. The husband's name made him liable for the losses. The simple dogmatic denial of ownership could not change the real status of the parties under the facts of this case.

Section 3157 of the Code of Georgia (Park's) provides:

"An ostensible partner is one whose name appears to the world as such, and he is bound, though he have no interest in the firm. A dormant or secret partner is one whose connection with the firm is really or professedly concealed from the world."

### As to Estoppel.

The doctrine of estoppel has been invoked by counsel for the trustee, and convincing array of authorities cited in support of his contentions. Under any view of the case—whether the wife is a dormant partner or actually owns the property by secret stipulation with her husband—she should be estopped from now asserting any claim to the property as against the creditor, represented by the trustee, who undoubtedly credited the husband on the strength of belief in his ownership. The wife stood by and connived at the fraud while the actual stock subscription was being taken, and to allow her now to assert her claim would be unconscionable. All standard authorities and the courts of last resort of all the states and of the United States have so uniformly upheld the application of this doctrine to such cases that it seems unnecessary to cite them in detail. The essence of them all is tersely stated in the following quotation from 12 Ruling Case Law, Husband and Wife, § 191: "Unquestionably, a married woman may, by her own voluntary conduct, forfeit protection to her separate estate. Being sui juris in respect to such property, she is responsible for her own fraudulent acts, as well as subject to the law of estoppel. And where a husband sells, as his own, property belonging to his wife, and she, with knowledge of the sale and an opportunity of notifying the purchaser of her rights, and before the price is paid, fail to do so, it has been held that she is estopped from asserting title. So a married woman, by permitting her husband to use and manage her separate property, thereby conferring on him the indicia of ownership, whereby third persons are induced to give credit to him on the faith of his ownership, may be estopped to claim the property as her separate estate as against the claims of such creditors."

To the same effect is 21 Cyc. 1399, with the added emphasis on the necessity of inducement by the wife that "the credit, however, must have been extended in reliance upon the husband's ownership caused by some act of the wife."

The Supreme Court of Georgia, in the case of Dill v. Hamilton, 118 Ga. 208, 44 S. E. 989, announces the same rule in this state, and, after holding that in some cases a creditor could not assert a lien against a wife's secret equity, added: "For, under such circumstances, the creditor is not in a position to assert a lien on the land as the property of the husband, unless the conduct of the wife was such as to estop her from setting up a claim to the same."

Trustee's counsel have cited voluminous authorities, a few of which are Bigelow on Estoppel, p. 624; Austin v. Southern Home B. & L. Ass'n, 122 Ga. 439, 50 S. E. 382; Dotterer v. Pike, 60 Ga. 29; Laughlin v. Mitchell, 121 U. S. 411, 7 Sup. Ct. 923, 30 L. Ed. 987; Keating v. Keefer, Fed. Cas. No. 7,635; St. Louis & S. F. R. Co. v. Folz (C. C.) 52 Fed. 627.

After rendering this opinion the referee entered an order requiring the bankrupt to immediately turn over to Lanham, trustee, a certain

stock of goods and merchandise located in storehouse at 410 Broad street in the city of Rome, Floyd county, Ga., consisting of fruits, candies, confections, etc., and also certain showcases, cash register, refrigerator, and other furniture in the storehouse.

A question was raised in this case as to the right of the referee to decide the question of the ownership of this stock of goods in a summary proceeding; but in the brief of counsel for Mrs. A. Victor, the claimant of the stock of goods, in a proceeding against A. Victor, bankrupt, and his wife, by the trustee in bankruptcy, this is stated:

"On the hearing, representing the wife, we raised the question of the court's jurisdiction to hear and determine this matter on the summary proceeding, and insisted that it could only be done on a plenary suit filed in the proper court to recover the property. We withdraw this objection to the court's jurisdiction, and insist upon a decision upon the merits of the controversy, believing that the court can, under this evidence, adjudicate the question of title, so as to end the matter."

[1] The only remaining question, therefore, is the correctness of the referee's decision, holding that the stock of goods in question belongs to A. Victor, the bankrupt. I think his finding that A. Victor was the owner of the property in question is clearly right. Certainly there is abundant evidence to support his finding. The reasons given in the excellent opinion filed by the referee render it unnecessary for me to say more than that his conclusion is abundantly supported by the evidence and should not be interfered with.

[2] It is almost unnecessary to say here, what I have so often said, that the opinion of a referee in bankruptcy, on questions of fact, will not be interfered with, unless clearly and manifestly erroneous; and such is not the case here.

The action of the referee is approved and confirmed, and an order will be entered accordingly.