### 40519. BROWN et al. v. CITIZENS & SOUTHERN NATIONAL BANK.
(317 SE2d 180)

HILL, Chief Justice.

In January of 1976, Citizens & Southern National Bank (C & S) obtained a $5,009.20 consent judgment against Gardner Brown. Later that year, C & S discovered that Gardner Brown owned a 1975 Chrysler Cordoba, which he had purchased in May of 1975 and financed through the Federal Employees Credit Union (FECU). In

November of 1976, C & S sent a notice of lien to FECU to be processed and forwarded to the Motor Vehicle Division (MVD) of the Revenue Department; FECU responded that its lien had been satisfied and the title had been sent to the MVD to be transferred to the new owner. The designated transferee was Gardner Brown's wife, Kathleen. Subsequently, because of C & S's intervention, an administrative stop was placed on the transfer of title by MVD.

C & S then brought suit against the Browns and FECU to cancel the conveyance to Mrs. Brown and seeking damages, alleging that the Browns and the FECU had conspired to accomplish a fraudulent transfer of the car. The case was tried to a jury. At the close of the evidence, the trial judge directed a verdict as to liability against the Browns. The jury then returned a verdict against them for $3,000 actual damages, $25,000 exemplary damages, and $17,475 attorney fees.[1] The Browns appealed, and the Court of Appeals affirmed. *Brown v. C & S Nat. Bank*, 168 Ga. App. 385 (308 SE2d 850) (1983). We granted certiorari to determine whether the Court of Appeals erred in affirming the trial court in denying the defendant's motion for directed verdict and in directing a verdict against the defendants on liability.[2]

The first of these issues is more significant than merely the failure to direct a verdict because it appears on these facts that C & S discovered an alleged fraudulent transfer in progress, succeeded in preventing that transfer by obtaining an administrative stop from MVD, thereby avoided the damage to itself which the transfer would have caused, and therefore cannot maintain a suit for damages. The second of these issues raises the question of whether the trial court and Court of Appeals correctly applied this court's decision in *Chambers v. C & S Nat. Bank*, 242 Ga. 498 (249 SE2d 214) (1978).

1. The Browns contend that C & S was not damaged by the alleged fraudulent transfer because due to C & S's intervention, a title in Kathleen Brown's name was never issued by MVD. C & S contends, however, that it was injured by Gardner Brown's action in assigning the title to his wife. Brown did not personally sign the title, thereby transferring the car to his wife. See OCGA § 40-3-31 (a). Rather the signature indicates that it was signed by power of attor-

---

[1] The judgment specified that the plaintiff had elected to recover damages rather than to set aside the transfer and authorized MVD to proceed to transfer the title to Kathleen Brown. It also specified that when the judgment had been paid in full, it would be deemed to partially satisfy (in the amount of $3,000) the $5,009.20 consent judgment.

[2] The direction of a verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a verdict. *Curl v. First Fed. Sav. &c. Assn.* 243 Ga. 842 (1) (257 SE2d 264) (1979). Thus, when considering motions for directed verdicts, the evidence is construed against the movant. Hence, in Division 1 of this opinion, the evidence is construed against the Browns, but in Division 2 it is construed in their favor.

ney. The MVD returned the application for title to Kathleen Brown because no power of attorney authorizing someone to sign for Gardner Brown was submitted. An undated power of attorney naming Mike Rooney of the FECU was then received by MVD on November 22, 1976. On that date C & S sent its notice of lien to FECU, FECU responded that its lien had been satisfied, and on December 1, 1976, the administrative stop was placed on Kathleen Brown's title application.

OCGA § 40-3-31 (d) provides: "Except as . . . between the parties, a transfer by an owner is not effective until this Code section . . . [has] been complied with; and no purchaser or transferee shall acquire any right, title, or interest in and to a vehicle purchased by him unless and until he shall obtain from the transferor the certificate of title thereto, duly transferred in accordance with this Code section." The Browns urge that C & S's rights were not affected by the attempted transfer.

We find, however, that as between the Browns, title was conveyed to Mrs. Brown, that an officer levying on the vehicle may have been deterred by that transfer, that the Browns' actions therefore created, at a minimum, a cloud upon title to the vehicle sufficient to impair C & S's ability to enforce its judgment, that C & S could not adequately protect itself by simply avoiding the alleged attempted fraud but was required to take affirmative action to protect its rights, and thus the Browns' actions constituted injury possibly giving rise to a cause of action in C & S. Clearly the bank was entitled to equitable relief to set aside the alleged fraudulent transfer and its election to accept damages should not defeat its right to recover damages. The trial court therefore did not err in overruling the Browns' motion for directed verdict, and the Court of Appeals was correct in affirming the trial court's order.

2. There was evidence at trial that Mrs. Brown advanced $2,000 toward the purchase of the Cordoba in 1975 and that she had made the payments to FECU.[3] There was evidence that it was always intended that title would be in her name because she paid for the car. The trial court granted C & S's motion for directed verdict on liability on the basis of *Chambers v. C & S Nat. Bank,* supra, and the Court of Appeals relied upon *Chambers* in affirming.

OCGA § 18-2-22 provides: "The following acts by debtors shall be fraudulent in law against creditors and others and as to them shall be null and void: . . . (3) Every voluntary deed or conveyance, not for a valuable consideration, made by a debtor who is insolvent at the time

---

[3] It is unclear whether this was $2,000 cash down or was represented by her assumption of an outstanding $2,000 loan.

of the conveyance." It is undisputed that the husband here was indebted to C & S and insolvent at the time of the conveyance. Thus, we need consider only the words "voluntary" and "valuable consideration."

The cases show that the word "voluntary" is not used in its ordinary sense, meaning "free choice" as opposed to "compelled."[4] In fact, the word "voluntary" is used to mean "without valuable consideration." In *Bussell v. Glenn,* 197 Ga. 816, 818 (30 SE2d 617) (1944), it was held that a deed from a father to his daughters without consideration other than love and affection was a voluntary conveyance. In *Stokes v. McRae,* 247 Ga. 658, 659 (278 SE2d 393) (1981), the court stated: "We have held, as the subsection indicates, that a voluntary conveyance or deed is one without any valuable consideration."

C & S relies upon *Chambers v. C & S Nat. Bank,* 242 Ga., supra at 501, quoting from *Mercantile Nat. Bank v. Aldridge,* 233 Ga. 318, 321 (210 SE2d 791) (1974), where we said: Under Code § 28-201 (3) [now OCGA § 18-2-22 (3)], "the only facts necessary to be shown in order to render the deed from [the husband] to his wife fraudulent in law, are the indebtedness, the insolvency of the debtor, and that the deed was voluntary. When these facts are proved, the law conclusively presumes a fraudulent intent and declares the instrument void so far as creditors who held demands against the [debtor] at the time of the conveyance are concerned. [Cits.]" However, as we have seen, proving that the deed was "voluntary" and proving that the deed was "not for a valuable consideration" amount to the same thing.[5] C & S relies on *Chambers,* supra, for the proposition that the consideration for the conveyance is irrelevant. As shown above, this argument is misplaced.

We now consider whether there was evidence of "valuable consideration." In *Stanton v. Adams,* 180 Ga. 142 (178 SE 154) (1935), the jury found in favor of Mrs. Adams. She proved that the consideration for the deeds from her husband was money she had loaned him long prior to the execution of the deeds. This court found that the evidence authorized the verdict against the judgment creditor's contention that the deeds were voluntary conveyances executed to hinder, delay and defraud creditors. Thus, it has been held that the consideration for a deed from husband to wife may be satisfaction of existing loans; i.e., it is not required that there be a contemporaneous exchange of money in order for there to be valuable consideration for a conveyance.

---

[4] Thus, the debtor's testimony that the conveyance was "voluntary on his part" and of his "own free will" does not establish that the conveyance was "voluntary" within the meaning of OCGA § 18-2-22 (3), supra.

[5] In *Chambers,* supra, the deed was a gift (242 Ga. at 499), and hence it was undisputed that the deed was without consideration; i.e., was voluntary (242 Ga. at 501).

In *Rowe v. Cole*, 183 Ga. 477, 481 (188 SE 668) (1936), the court said: "The husband, where indebted to his wife, may prefer her as a creditor by conveying to her property in satisfaction of the debt or otherwise. This is so although the conveyance actually operates to hinder or prevent the collection of the claims of other creditors, where made for a valuable consideration and in good faith." Quoting an earlier opinion in the same case, *Rowe v. Cole*, 176 Ga. 592 (168 SE 882) (1933), the court said: "As said in a previous decision of this case, 'the husband may be indebted to the wife for the money with which he purchased real estate, and such bona fide indebtedness is a valuable consideration to support a deed from him to her.' "[6]

There was evidence in this case from which the jury could have found that the consideration for the conveyance was money which had been advanced by the wife to pay for the car, i.e., the conveyance was made pursuant to and in satisfaction of a resulting trust. In affirming the grant of C & S's motion for directed verdict as to liability, the Court of Appeals found: "The voluntariness of the deed was shown by Mr. Brown's testimony to that effect and by testimony that there was no present consideration for the transfer of title." 168 Ga. App., supra at 386. As shown above, satisfaction of an existing loan may constitute valuable consideration.

Under the evidence here, a jury would have been authorized to find that the conveyance from husband to wife was supported by "valuable consideration" within the meaning of OCGA § 18-2-22, supra.

C & S urges, however, that in *Stanton v. Adams* and *Rowe v. Cole*, cited above for the proposition that satisfaction of an existing obligation may constitute valuable consideration, the transfers of title from husband to wife occurred before entry of judgment in favor of the husband's creditors. C & S urges that here the attempted transfer of title occurred after it obtained its judgment and hence this case is controlled by the rulings in *Dill v. Hamilton*, 118 Ga. 208 (44 SE 989) (1903); *Ford v. Blackshear Mfg. Co.*, 140 Ga. 670 (79 SE 576) (1913); *Krueger v. MacDougald*, 148 Ga. 429 (96 SE 867) (1918); and *Orr Shoe Co. v. Lee*, 159 Ga. 523 (126 SE 292) (1925). Examination of these cases shows that several factors are pertinent, such as the date of the creditor's judgment vis-a-vis the date of the transfer of title to the wife, whether the wife merely loaned her husband money or was the beneficiary of a resulting trust, whether title was placed in the husband's name without the wife's knowledge or consent, and whether the wife permitted her husband to use the property for the

---

[6] In *Bussell v. Glenn*, supra, 197 Ga. at 818, the court noted, in dicta, that a conveyance made pursuant to and in satisfaction of a resulting trust would not be a voluntary conveyance.

purpose of obtaining credit. However, one critical factor, ignored by C & S, common to all four cases is the fact that the creditor extended credit to the husband in reliance on his apparent ownership of the property. This critical factor of reliance is not present in this case. C & S did not extend credit to Brown in reliance on his ownership of the Chrysler.

The case in point is *Burt v. Kuhnen*, 113 Ga. 1143 (39 SE 414) (1901), a case in which the judgment creditor did not rely on the husband's apparent ownership of the property in extending credit to him. There the court held: "Land bought by a husband for his wife and paid for with her money is equitably her property; and though he takes the legal title to the same, it can not, as against a claim by her, be lawfully subjected to the satisfaction of a judgment against him, if, at the time of the creation of the debt on which the judgment is founded, credit was not given to the husband on the faith of his apparent ownership of such land." That holding is applicable here. See also Division 1 (b) of *Orr Shoe Co. v. Lee*, supra, and *Smallwood v. Warfield*, 49 Ga. App. 93 (174 SE 185) (1934).

C & S also urges that the defendants' testimony was equivocal and should be construed against them, that Mrs. Brown's contributions toward purchase of the automobile should be construed to be a gift under OCGA § 53-12-28, and that the burden of showing that the transaction was fair was upon the defendants pursuant to OCGA § 19-3-10. The defendants' testimony may be said to be equivocal in showing a loan from wife to husband but not in showing equitable title to be in the wife. The presumption of gift created by OCGA § 53-12-28 is rebutted by showing that a resulting trust arose in favor of the wife and this issue, as well as the fairness issue, should be resolved by a jury.

We therefore find that the Court of Appeals erred in affirming the directed verdict as to liability.

*Judgment affirmed in part; reversed in part. All the Justices concur.*

DECIDED MAY 1, 1984 — REHEARING DENIED JULY 2, 1984.

*Hugh O. Brock III*, for appellants.
*Alston & Bird, Franklin R Nix*, for appellee.
*Peter G. Williams*, amicus curiae.