## KRUEGER *et al.* *v.* MacDOUGALD, trustee.

1. It is an elementary rule of construction, as applied to a pleading, that it is to be construed most strongly against the pleader; and that if an inference unfavorable to the right of a party claiming a right under such a pleading may be fairly drawn from the facts stated therein, such inference will prevail in determining the rights of the parties.

2. Where a wife, with knowledge that her husband has taken title in his own name to property purchased with funds belonging to her, permits him to retain title and possession, and credit is extended to him upon the faith of his apparent ownership, she will be estopped from asserting her secret equity as against a trustee in bankruptcy seeking to recover the property to be applied upon debts arising from credits extended on the faith of the husband's apparent ownership.

3. A loan of money by a wife to her husband creates as between them the relation of debtor and creditor, and this relation is not changed into that of trustee and cestui que trust in consequence of a promise of the husband, at the time the loan is made, that he will invest the money in a particular property for the benefit of the wife. A failure to comply with such a promise on his part amounts to nothing more than a breach of an executory promise, and leaves her in no better position than that of an ordinary creditor whose cause of action arises from a breach of any other simple contract.

4. In such a case the right of the wife is that of a general creditor; and while the husband has the right, so far as concerns the law of this

State, to prefer his wife to other unsecured creditors, and may pay her as well in property as in money, provided the property so conveyed in satisfaction be reasonably proportioned to the amount of the debt, the conveyance by him to her of property in a sum grossly in excess of the amount due to her amounts to a conveyance made with intent to hinder, delay, and defraud creditors, within the legal conception of that term; and this is true notwithstanding both husband and wife claim to have acted in good faith in the transaction; and such conveyance will be set aside as a fraud upon other creditors.

5. None of the assignments of error show cause for reversal.

No. 705. ·September 14, 1918.

Equitable petition. Before Judge Pendleton. Fulton superior court. September 15, 1917.

Suit was brought by a trustee in bankruptcy against Charles Krueger, a bankrupt, and his wife, to cancel certain conveyances of real estate and transfers of certain corporate stocks, the plaintiff alleging that the property so conveyed was the property of Charles Krueger and had been conveyed by him to his wife in fraud of his creditors; and praying, amongst other things, that the property be subjected to the payment of two debts against the bankrupt, the one in favor of Mrs. J. R. Patillo for $3328, besides interest, and the other in favor of the Atlanta National Bank for $2509.06, besides interest. The defendants filed answers. In that of the wife, amongst other matters, she alleged as follows: "This defendant denies that at the time of the execution of Chas. Krueger indorsement on the notes of Mrs. Patillo that the said Chas. Krueger was the owner of the property referred to, and which is the home place and where defendant and her family are living on McDonough Road. Further answering, this defendant says that she and her husband were living in Pensacola, Florida, prior to 1905, where the father of this defendant, Mr. Louis Boley, lived, and who was a man of very large means. That after coming to Atlanta, where they were forced to move on account of Chas. Krueger's health, that defendant and her husband boarded for a while and then lived in rented houses until about September, 1906, when defendant purchased the property on McDonough Road, where she now lives. Prior to this time this defendant had owned a home in Pensacola, Florida, which defendant's father had given her, and which he sold for her during the first year defendant and her husband were in Atlanta. From the proceeds of the sale of the Pensacola place this defendant received $4000 from her father, and desired to buy a home in Atlanta. The said Chas. Krueger (this defendant being

without business knowledge) had always transacted most of her business for her, doing so most of the time in his own name. When this defendant purchased the McDonough Road property, about $1800 was to be paid in cash, a mortgage of $1000 assumed, and about $1200 to be spent on the house, which had to be practically rebuilt. In view of all these transactions that had to be made, and the amount of detail necessary to carry it out, the said Chas. Krueger took the title to the property in his own name without this defendant's knowledge, because he had always looked after this defendant's business, and desired to save this defendant from the trouble of managing this property, improving the same, and signing all the necessary papers. The said Chas. Krueger never put one dollar of his money in the purchase of said place. It was all paid for out of the money this defendant's father had given her. Defendant further says that when she discovered that the law of Georgia was different from the law of Florida in this, that a husband can sell his property without his wife joining in the deed, that this defendant demanded that the said Chas. Krueger place the title in her name, as she had always supposed that he could not sell it without joining this defendant in the deed, and that the said Chas. Krueger made the deed to her in compliance with her request, and because the property was hers and he had no interest therein. . . Chas. Krueger is not and has not been in possession of said real estate, but that the same was paid for with her money, and that she has been in possession of the same, and until she demanded a deed from her said husband she had always believed that as his wife she would have to join in the making of a deed before the same could be sold. . . This defendant . . went to Florida and borrowed $10,000 from her father, and sent this amount back to Atlanta and loaned it to her husband under the express understanding that he would use it in getting the company out of bankruptcy, and he was to turn the whole thing over to her so she would have something to pay her father back the money she owed him. That she was not in the office of said company and did not know anything about how its stock was issued; that when the stock was issued to her husband she did not know of it, but when she found that it stood in his name she immediately demanded that it be put in her name and turned over to her; that this was done, and that the stock is now in her possession. That this stock was paid for with her money loaned her by

her father, and that she was entitled to the same from the day it was issued, and that it was issued, and that it was no fault of hers that her husband had it in his name. . . She is the owner of the tract of land referred to, . . and of the stock in the Krueger Manufacturing Company referred to, and that the said Chas. Krueger has no right, title, or interest in or to the same; but that the same were transferred to her for the reasons set out in . . her answer." After the filing of this answer the plaintiff amended his petition by filing a pleading in the nature of a replication, in which it was alleged that even if the defendant, Mrs. Krueger, had an equitable interest in the property in question, resulting from the use by her husband of her money in its purchase, she was estopped to assert it as against the creditors upon whose behalf this suit was brought.

The plaintiff proved the debts sued upon, and showed that Charles Krueger held the legal title to both the real estate and the corporate stocks in question at the time the credit was extended, the former under conveyance to him duly executed and recorded in the year 1906, and the latter under stock certificates issued to him at dates ranging from 1905 to March 1, 1911, all of these dates being anterior to the extension of the credit upon which the debts sued upon were based. It was further shown that upon investigation the creditors named found the title to the property in question to be in the bankrupt, and that the credits were extended upon the faith of the apparent ownership of the property by him. Mrs. Krueger testified to the allegations as laid in her answer, that her money paid for the real estate, and that her husband took the title in his name under the circumstances stated in her answer. She further testified that she borrowed the money from her father which was invested in the corporate stocks in question, and sent the money to her husband to be so invested, and that he took the title in his name, and for the reasons stated in her answer conveyed to her, in 1912, the property in question, the real estate by deeds which were of record, the corporate stocks by transfer of the certificates. It was shown that the bankrupt and his wife jointly occupied the real estate as a home from the date of its purchase thenceforward. The corporate stocks were shown to be of the actual value of $38,-500. There was no evidence that at the time the credit was extended the creditors extending the credit had any knowledge of the claim asserted by her to the property. The trial judge, taking the

view that the wife having permitted the husband to take title in his own name, to treat the property and deal with it for a number of years as his own, and to obtain credit on the faith of his apparent ownership, it would be a fraud in law to permit her to set up her secret equity as against the creditors without notice of her claim, held that she was estopped to assert her alleged equity, and directed a verdict finding the property subject, by decree cancelling the conveyance to the wife of the real estate and as well the transfer to her of the corporate stocks. Error was assigned upon this judgment.

*Bell, Ellis & Bell* and *Colquitt & Conyers,* for plaintiffs in error. *Bryan, Jordan & Middlebrooks,* contra.

ATKINSON, J. (After stating the foregoing facts.)

1. The principle announced in the first headnote is so universally recognized that it is unnecessary either to cite authority for it or to state the reasons upon which the rule is based.

2. Relatively to the real estate involved in this suit the uncontradicted evidence, including the admissions of the defendant's answer, shows that the money of the wife was used by the husband in making the initial payments upon the purchase-price; that the title was taken in the name of the husband, and the deeds conveying the same were placed on record in the year 1906 and continuously remained in his name, he paying the taxes thereon for a number of years and, so far as the record discloses, up to the date of the execution of the deed to his wife in 1912. In the meantime the debts which are the foundation of the present suit were contracted by the husband. The property was jointly occupied continuously by the husband and wife as a home, and was so occupied at the time the suit was filed. There is no evidence that the wife at any time asserted or exercised any independent dominion over the property, not even, according to the record, having ever returned it for taxes in her own name or paid taxes thereon. Before the money was loaned by Mrs. Patillo an investigation was made for her to ascertain the condition of the title to this property, and it was found upon examination that the title was vested in the husband, Charles Krueger, and that the shares of stock stood in his name. When his indorsement was made upon the note to the Atlanta National Bank he was the president of the Krueger Manufacturing Company, with which company the bank had done business previously, and, upon the indorsement of Charles Krueger,

had extended a line of credit to the amount of two or three thousand dollars. The cashier of the bank testified that at the times loans were made and credit extended to Keaton-Krueger Company he understood that Krueger was the principal owner of the Krueger Manufacturing Company, that he had real estate at that time, and that that was the reason the bank was willing to take him as indorser. These loans to the Keaton-Krueger Company, indorsed by Krueger, were short-time loans, sixty and ninety days, which were renewed from time to time. The evidence is in conflict as to whether any direct representation was made by Krueger to the bank's cashier to the effect that Krueger owned either the corporate stocks or the real estate; but at that time the title to both the land and the stocks stood in his name. There is no intimation in the evidence that either the cashier or Mrs. Patillo had the slightest knowledge of any claim of Mrs. Krueger of an equity in the property; nor did this fact come to their knowledge until after the execution of the deed and the assignment in 1912. It was insisted upon the part of Mrs. Krueger that while the legal title to the real estate was taken in the name of her husband, she had no knowledge of that fact, and therefore was entitled to assert her equity as against the creditors, notwithstanding the fact that the husband might have actually obtained a credit upon the strength of his apparent ownership; and this seems to be the controverted question around which they were chiefly at issue.

Pretermitting the question as to whether the negligent omission of the wife to inform herself as to the real state of the title would entitle her to assert her equity as against bona fide creditors, we think that from the statements of her answer it is clearly deducible that she knew that the title had been taken in her husband at the time the property was purchased. Her husband, according to her answer, had always transacted most of her business for her, doing so most of the time in his own name. From her answer we quote as follows: "The said Chas. Krueger (this defendant being without business knowledge) had always transacted most of her business for her, doing so most of the time in his own name." This is an admission that according to the constant and prevailing method of transacting her business she knew that her husband was accustomed to transact it in his name. She further admits in her answer as follows: "When this defendant purchased the McDonough Road property, about $1800 was to be paid in cash,

a mortgage of $1000 assumed, and about $1200 to be spent on the house, which had to be practically rebuilt. In view of all these transactions that had to be made, and the amount of detail necessary to carry it out, the said Chas. Krueger took the title to the property in his own name without this defendant's knowledge, because he always had looked after this defendant's business, and desired to save this defendant from the trouble of managing this property, improving the same, and signing all the necessary papers." It will be observed, according to the course of dealings between husband and wife, that the husband was accustomed with the wife's knowledge to transact her business in his name. She gave no single instance, either in her answer or her testimony, in which she had acted for herself in any transaction. There was considerable detail necessary to carry out the transaction, according to her statement of it. She knew that this had to be done. She knew that it was done. She knew that it was not done by herself. She knew that it must be done by some person. She knew that that person must be her husband; for he alone had authority from her to represent her either in this or any other transaction, so far as the record discloses. Since he undertook to manage all these transactions and to execute the necessary papers without consulting her, the irresistible conclusion is that she must have known that the title was in her husband. Knowing this she permitted it to remain there from 1906 until 1912, without any question, thus enabling him to create debts upon the credit thus established for him by permitting him to claim as his own her property. It would be inequitable and unjust to permit her now to assert an equity in opposition to creditors claiming to be paid out of the property left by her in her husband's name. There is no intimation in this record that this wife was wanting in ordinary business sagacity. A woman of sound memory and discretion she was, as the record discloses, possibly under the influence of her husband, but certainly not without knowledge as to the true status of affairs. The statement in her answer to the effect that she had no knowledge that the legal title was in her husband, a mere general denial, is completely overborne by the facts as she states them; for the want of knowledge upon her part is utterly inconsistent with the existence of the facts alleged in her answer. The inference unfavorable to her must necessarily be drawn from the facts as stated. This view of the case is reinforced by the further statement of the defendant,

"that when she discovered that the law of Georgia was different from the law of Florida in this, that a husband can sell his property without his wife joining in the deed, that this defendant demanded that the said Chas. Krueger place the title in her name." If she had no knowledge that the title was taken in the name of the husband in the first instance, why should her mere discovery that the law of Georgia was different from the law of Florida in the respect above indicated in any wise affect her action? If she thought the title was in her and believed it, knowing that her own money had paid for it, why should that circumstance call to her mind the necessity of a change in the title? Yet she says it was only upon the discovery of the difference between the law of Georgia and the law of Florida that she demanded that Chas. Krueger place the title in her name. The clear inference from these statements is that she must have had knowledge that the title was in Chas. Krueger, and not in herself, prior to the time that she discovered the difference between the laws of Georgia and Florida. When we come to read the answer and analyze it, the conclusion is irresistible, notwithstanding her protestation in her answer to the contrary, that the defendant, with knowledge of the facts of which she was informed, would be charged as matter of law with knowledge that the title was in her husband. This being true, and the credits having been extended to the husband on the faith of his apparent ownership, the law raises against her an estoppel to assert her secret equity against these creditors. *Gorman* v. *Wood*, 68 *Ga.* 524; *Brown* v. *West*, 70 *Ga.* 201; *Kennedy* v. *Lee*, 72 *Ga.* 39; *Robinson* v. *Stevens*, 93 *Ga.* 535 (2), 538 (21 S. E. 96); *Ford* v. *Blackshear Mfg. Co.*, 140 *Ga.* 670, 674 (79 S. E. 576), and cases cited. Counsel for the defendants have urged upon us the proposition that since these creditors had no liens either by judgment or by contract, the property could not be subjected. That might be a pertinent inquiry if this controversy were between secured and unsecured creditors, or if the issue were as to whether a particular lien had been imposed upon this property; but in so far as the doctrine of estoppel is concerned, it may be applied as against the enforcement of a debt whether it be secured or unsecured. The estoppel gives no lien and defeats no lien. It only interposes a barrier against the assertion of a claim by one person who has permitted another to expend money or to obtain

a credit upon a representation expressly or impliedly made, upon which the creditor has in good faith acted to his prejudice.

3, 4. The reasoning just above stated applies with equal cogency to the claim of both of the creditors represented by the trustee in bankruptcy. There is, however, another legal principle which is controlling, and which is equally applicable to both creditors, in so far as the same relates to the corporate stocks in question. It will be noted that in her answer Mrs. Krueger alleges that she borrowed $10,000 from her father, which she "loaned" to her husband with the understanding that he was to use it in bringing about a composition of a bankrupt estate in which he was interested, and turn over to her the property which he received. The money was so used by the husband, but instead of turning over the corporate stocks to her he kept them in his own name. Some years later, after the debts had been created against him, he conveyed to her the stocks in question upon the theory that they belonged to her. Under the view we take of this case there was never any trust in favor of the wife imposed upon these stocks. When she loaned the money to her husband the relation of debtor and creditor was established between them. His promise to turn the property over to her was a mere executory agreement, a breach of which would give her a right of action; but it could no more give her an equitable interest in the res than could the breach of any other promise in respect to the sale of goods. When the husband transferred to the wife the corporate stocks they were of the value (according to the husband's testimony as a witness for the wife) of $38,500. The debt due by the husband to the wife was $10,000. The transfer left him wholly insolvent. This being true according to the undisputed evidence, it requires no argument to show that the transfer was void as against the husband's creditors, when attacked, as was done in this case, upon the ground that it was fraudulent within the meaning of our statute which prohibits a debtor, insolvent at the time, from conveying or transferring his property with intent to delay and defraud his creditors. No claim of good faith could give validity to the transaction. It would be legally impossible for the husband to pay or for the wife to receive in good faith three times the amount of her debt. Such a transaction the law denounces as fraudulent upon its face. The husband may prefer his wife, but in doing so he must have due regard for the interests of other creditors. We have considered the cases cited

on the brief of the plaintiffs in error, commencing with *Dodd* v. *Bond,* 88 *Ga.* 355 (14 S. E. 581), and including *Bell* v. *Stewart,* 98 *Ga.* 669 (27 S. E. 153), and *Ford* v. *Blackshear Manufacturing Co.,* supra, and are of the opinion that the principles in these cases announced do not require a different ruling in the present case. We therefore conclude that the trial judge committed no error in directing a verdict for the plaintiff.

5. None of the assignments of error show cause for reversal.

*Judgment affirmed. All the Justices concur.*