ROLAND *v.* WILKINSON-BOLTON COMPANY.

GILBERT, J.  1.  Where a wife who claims an equitable title to property knowingly permits her husband to retain the legal title and possession thereof, and credit is extended to him upon the faith of his apparent ownership, she will be estopped from asserting her secret equity as against a creditor who has no notice of such equity. *Kennedy* v. *Lee,* 72 *Ga.* 39; *Ford* v. *Blackshear Mfg. Co.,* 140 *Ga.* 670 (79 S. E. 576); *Krueger* v. *MacDougald,* 148 *Ga.* 429 (96 S. E. 867); *Jones* v. *Foster,* 150 *Ga.* 277 (103 S. E. 491); *Orr Shoe Co.* v. *Lee,* 159 *Ga.* 523 (126 S. E. 292), and cit.

2. The ruling above applies as well to creditors who have not reduced their claims to judgment as to those who have, where the facts make the same case as stated. *Krueger* v. *MacDougald,* supra.

3. The ruling in the first headnote controls the case. The assignments of error upon certain instructions of the court, in the circumstances named above, show no cause for a reversal. Some of these instructions are subject to certain of the criticisms made; but construed in the

Husband and Wife, 30 C. J. p. 830, n. 74.

light of the entire charge and of the evidence in the case, the inaccuracies pointed out will not work a reversal.

*Judgment affirmed. All the Justices concur.*

No. 5931. NOVEMBER 18, 1927.

Claim. Before Judge Perryman. Wilkes superior court. February 2, 1927.

Wilkinson-Bolton Company obtained a judgment against G. W. Roland, and caused a fi. fa. to be levied on described real property in the possession of Roland, whose wife thereupon filed a claim. The plaintiff filed an equitable petition in aid of the fi. fa., in which it was alleged, among other things, "that at the time G. W. Roland, the defendant in fi. fa., created the debt sued on in this case, said G. W. Roland was in possession of and held legal title to the lands levied on, and that plaintiff in fi. fa., its officers and agents, knowing the said G. W. Roland was in possession of said lands and held the legal title thereto, extended to him the credit which is the foundation of the judgment sued on and obtained against him in this case, on the faith of his ownership of said property;" that on the failure of Roland to pay the debt the plaintiff's attorney notified Roland of the intention to file suit against him on his note, and immediately thereafter Roland executed and had recorded a deed conveying to the claimant the lands levied on, which conveyance was an assignment or transfer by an insolvent debtor with intent to delay or defraud creditors, which intent was known to and participated in by his wife; that, having no other property, this conveyance caused Roland to become insolvent; and that the deed was voluntary and without consideration, by a debtor insolvent at the time.

The claimant testified as follows: "I had a contract with Mr. Roland about this matter; we talked it over, but it was not in writing. As well as I remember, he come in possession of the land in 1913. From the time his health failed him I had a talk with him. He had a interest in the place, he had a child's part; and he told me he wanted me to have it because I worked, and the stock was mine anyway. I had a mule and a horse; they belonged to me. I had cows and hogs. I milked the cows and used the milk and butter for my table. I fed my family with it. That was my own property. I rented some land. I turned the crops I made over to him and let him pay the debts with it. He paid

the rent out of the cotton, and the balance went on the debts. Before 1913 he says 'Mitt, you have done all the work. I have got no health; my health has failed me; and you have done all the work and the stock is yours, and I want you to have this land.' He said he was going to make it over to me for the use of my stuff and my labor. In 1913 he told me it was mine. We had already made the agreement. I took possession of it and paid the taxes on it from then on. I put improvements on it. We built a cotton-house on it and a wire pasture, and I paid for them. I paid the taxes from that time to now, and I have the receipts. I took a writing from him later on. We knew that Mr. Bolton was going to sue us; and I says, 'George, it is not in writing,' and I says 'I don't want my property taken away, and I want it saved, and let's put it in writing.' I says, 'We will consult Mr. Colley,' and we come to see you about it. We put in writing this paper at that time, when I found out he was going to be sued. I wanted it done to save my own property; it was mine. I did not object to his using the income from that property to pay debts, this debt or any other debt. I have allowed him to use it up to this time, but I didn't want my little piece of land to go."

Undisputed evidence showed that the legal title to the land was in the defendant in fi. fa. until receipt of notice from the plaintiff of intention to sue, and thereupon the deed from Roland to his wife was executed; that credit was extended by the plaintiff to Roland because of knowledge that he held title to and was in possession of the land. It was not contended that the plaintiff had knowledge of the alleged parol agreement between Roland and his wife. It was conceded that the taxes on the land for several years between 1913 and 1922 were paid in the name of Mrs. Roland. A verdict subjecting the property to the fi. fa. was returned. The claimant moved for new trial, and excepted to a judgment overruling this motion.

*Colley & Wynne,* for plaintiff in error.

*W. A. Slaton* and *Norman & Norman,* contra.