### 22238. ATLANTA & WEST POINT RAILROAD CO. *v.* HYDE.

DECIDED SEPTEMBER 1, 1932.

*Howell, Heyman & Bolding, Allen W. Post, W. G. Post,* for plaintiff in error.

*Hall & Jones,* contra.

LUKE, J. Alvin M. Hyde recovered a verdict and judgment against the Atlanta & West Point Railroad Company in an action for personal injuries. The first question raised by the record is whether the trial judge erred in overruling the defendant's motion to dismiss the petition, on the ground that it "did not make out or present a cause of action."

Omitting those allegations that are deemed unnecessary in determining the question presented for decision, the petition makes substantially the following case: 2. Defendant "maintains a passenger-depot at Newnan, . . at which passengers are entrained and detrained."

3. Defendant's main-line track is on the west side of its depot, and it "maintains a walkway along its said main line approximately ten feet wide and eighteen inches higher than its said main-line track, for the use and convenience of the public in the transaction of any lawful business said public might have at said depot with said company, and with any passenger thereof. Said walkway extends along the tracks of said company the full length, north and south, of said depot building, and . . some 350 feet north of said building, and some 230 feet south thereof."

4. "That said walkway, so prepared and maintained as aforesaid, has been in use for many years, to the knowledge of said defendant, and, by its preparation and maintenance as a walkway, said defendant has invited the public having lawful business on said premises to use the same as a walkway."

5. "That for a number of years said company has maintained along the eastern side of said building . . a number of electric lights, which are turned on after sunset for the purpose of making visible, clear, and easy the travel on said walkway; especially are these lights turned on and kept burning in anticipation of the arrival of any passenger-train scheduled to stop at said depot or station after dark, and kept burning until the train has fully left said station, and all passengers and those having lawful business at said station have had ample time to leave said premises."

6. "That on August 12, 1930, the said company had a passenger-train scheduled to arrive and stop at said station at about 7 o'clock, p. m., and which train duly·arrived and stopped as scheduled."

7. "That petitioner, on said last-mentioned date and hour, went to said station to meet said train scheduled to stop as aforesaid, for the purpose of seeing and transacting some important business with a party, who, petitioner was informed, was a passenger on said train. Said business was of interest to said passenger and to petitioner, being a matter of mutual and reciprocal concern to both. Said business matter was as follows: Said passenger was seeking to employ a foreman and workers for the West Point Iron Works, of

West Point, Ga., and petitioner was a carpenter by trade who desired to secure this employment, and to receive the job to work for said iron works. Under the above-stated facts, petitioner alleges that his visit to said station was for a lawful purpose, and that he was not a trespasser in thus entering upon the premises of the defendant company."

8. That it was after dark when said train arrived at said station on the date and hour aforesaid, and, "before petitioner and others lawfully on the premises of said station had time to leave, said defendant, . . in violation of its duty, turned off the said lights, . . and this rendered dark and obscure the said walkway prepared and maintained for the uses as aforesaid."

9. That "when said lights . . were turned off, petitioner was leaving said station and walking along said walkway at a point thereon just north-east of the room in said depot building used for an express office. At said time said walkway was dark, and the train was moving south, some of the coaches of which were still north of where petitioner was walking. In these circumstances, and because of the darkness occasioned as aforesaid, petitioner was unable to see . . the condition of said walkway, and did not know, and could not ascertain, if there were any hidden defects therein, or discover any dangerous . . substance that might be thereon."

10. "That as petitioner was so using said walkway . . where defendant had invited him to walk as aforesaid, suddenly and without warning, petitioner stepped upon some dangerous and foreign substance which had been placed on said walkway (which was afterwards discovered to be a banana peeling), and, as a result, petitioner was violently thrown to the ground in and between said walkway and the railroad-track, his left leg was caught under the wheels of said train, and he was dragged some fifteen feet."

11. That as a result of said fall, his left leg was severed between the knee and ankle, and he was otherwise seriously injured.

(The allegations as to pain and suffering, permanent injuries, age, expectancy, and earning capacity, are omitted).

17. "Petitioner shows that he was without fault, and was in the exercise of ordinary care and diligence."

18. Defendant company was negligent in the following particulars:

(*a*) "In permitting said foreign and dangerous substance . . to be and remain in said walkway, which defendant had prepared as a place to be used by pedestrians, and which it had invited pedestrians to use. Especially is this true when defendant knew a ·passenger-train was to arrive at said hour, and that pedestrians would use said walkway in entering said train and departing therefrom, and that same would be used by all persons on said premises who had lawful business there."

(*b*) "In failing . . to inspect said walkway in anticipation of the arrival of said train, and to remove therefrom all dangerous substances which would cause injury or loss of life or limb if allowed to remain in said walkway, where defendant had invited those having lawful business on said premises to walk."

(*c*) "In turning off the lights that were placed by defendant along said walkway, which enabled those invited by defendant to use said walkway to discover any dangers thereon. It was gross negligence to turn off said lights before said train had departed from said station and before people lawfully on said premises, including your petitioner, had time to depart therefrom."

"When the petition is so defective that there can be no lawful recovery thereon, an oral motion to dismiss the case, in the nature of a general demurrer, may be made at any time before verdict." *Kelly* v. *Strouse,* 116 *Ga.* 872 (43 S. E. 280). "It is an elementary rule of construction, as applied to pleading, that it is to be construed most strongly against the pleader; and that if an inference unfavorable to the right of à party claiming a right under such pleading may be fairly drawn from the facts stated therein, such inference will prevail in determining the rights of the parties." *Krueger* v. *MacDougald,* 148 *Ga.* 429 (96 S. E. 867). "Where the existence or nonexistence of a particular fact is essential to the plaintiff's right of recovery, and where he makes no allegation with reference thereto, the inference is that the truth is against him. . ." *Trust Co. of Ga.* v. *Mobley,* 40 *Ga. App.* 468, 477 (150 S. E. 169). "The demurrer admits only the facts, and not the legal conclusions, drawn therefrom by the pleader." *Brown* v. *Mass. Mills,* 7 *Ga. App.* 642 (67 S. E. 832) ; *Anthony* v. *Dudley Sash &c. Co.,* 21 *Ga. App.* 412 (94 S. E. 634). The petition in this case is evidently based upon the theory that the plaintiff was an invitee, rather than a licensee or trespasser, and that, therefore, ordinary

neglect on the part of the defendant would warrant a recovery. Indeed, the brief of counsel for the defendant in error contains this statement: "Counsel for Hyde admitted in the court below that if, under the allegations of the petition, this relation was that of a trespasser or a bare licensee, then no cause of action was set forth, and the petition should be dismissed."

Much learning has been expended in differentiating trespassers, licensees, and invitees. See *Mandeville Mills* v. *Dale, 2 Ga. App.* 607 (58 S. E. 1060); *Jones* v. *Asa G. Candler Inc., 22 Ga. App.* 717 (97 S. E. 12). Speaking generally, and without going into the nice distinctions drawn between trespassers and licensees, the fundamental concept in both these classes is liability only for wilful and wanton injury. On the other hand, the failure to exercise ordinary care by the owner or occupant of premises creates liability in the case of an invitee.

What, then, was the status of the plaintiff in this case? The famous case of Plummer *v.* Dill, 156 Mass. 426 (31 N. E., 128, 32 Am. St. R. 463), has been quoted approvingly in many of the decisions of the appellate courts of this State. The rule is stated in this language: "It is well settled that to come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on. There must at least be some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the object of the visit may not be for the benefit of the occupant." See *Jones* case, supra, and cases cited. It appears from the *Jones* case that the plaintiff fell over a pile of lumber in a poorly lighted hallway of the Candler Building at a time when she was proceeding to Dr. Crenshaw's office in that building for the purpose of securing from him a contribution for a phonograph she was purchasing for the students of Oglethorpe University. This court held: "Under the undisputed evidence in this case the plaintiff entered the office building to see a tenant on business of her own, and was therefore a licensee only, and was not there by invitation, express or implied, of the owner of the building. The trial judge did not err in granting a nonsuit." In *Mandeville Mills* v. *Dale,* supra, the court quoted with approval from Beehler *v.* Daniels, 18 R. I. 563, 565 (29 Atl. 6, 27 L. R. A. 512, 49 Am. St. R. 790), as follows:

"There is a clear distinction between a 'license' and an 'invitation' to enter premises, and an equally clear distinction as to the duty of an owner in the two cases. An owner owes to a licensee no duty as to the condition of the premises, unless imposed by statute, save that he should not knowingly let him run upon a hidden peril, or wilfully cause him harm; while to one invited he is under obligation for reasonable security for the purpose of the invitation." Immediately following this quotation, the opinion continues as follows: "Mere permission to enter the premises creates the relation of licensee; invitation, express or implied, is necessary to create the more responsible relation and the consequent higher duty upon the owner or proprietor. In this class of cases wilfulness or wantonness is not necessary to the existence of liability, but merely ordinary neglect, either through an act of omission or commission." We quote next from 52 C. J. 538, § 2107 (3), as follows: "An invitee on railroad premises is a person whose presence there is for the company's interest or benefit as well as for his own." The following quotation is from 22 R. C. L. 918, § 164: "A person who does not go upon the premises of a railroad company as a passenger, servant, trespasser, or as one standing in any contractual relation to the company, but who is permitted by it to come upon its premises for his own interest, convenience, or benefit, is generally held to be on such premises as a licensee. . ." The following statement is from 20 R. C. L. 70, § 60: "And one who goes on premises for the purpose of securing employment is not to be deemed an invited person, in the absence of a showing that it has been customary for persons thus to enter with the acquiescence of the owner." In *Petree* v. *Davison-Paxon-Stokes Co., 30 Ga. App.* 490, 492 (118 S. E. 697), this court said: "To constitute one person an invitee of the other, there must be some mutuality of interest." In Post *v.* Texas & P. Ry. Co. (Tex. App.) 23 S. W. 708, where plaintiff was injured on the railroad platform at a time when the lights were out, the court held: "The railroad company is under no obligation to keep the platform about its depot in a safe condition as against a boarding-house keeper who goes to the depot to meet an incoming train for the purpose of securing a boarder." In *A. & B. Ry. Co.* v. *Owens, 123 Ga.* 393 (51 S. E. 404), the court held: "A railroad company owes to one who comes to its passenger station to receive a friend or guest upon arrival ordinary care for

his safety while at the station, and is liable for an injury resulting from the negligence of an employee in the handling of baggage." It appears from the facts of that case that the plaintiff went to the station to meet and "take charge of" a young lady organist who was expected to arrive on the defendant's train. It would appear from that decision that a person who goes to a railroad station to meet and look after an incoming passenger occupies the status of an invitee; that is to say, the company is interested in the convenience of its passengers, and there is a "mutuality of interest." The facts of the *Owens* case, however, differentiate it from the case at bar.

Bearing in mind that pleadings are to be construed most strongly against the pleader (*Kreuger's* case, supra); that "the demurrer admits only the facts, and not the legal conclusions drawn therefrom by the pleader" (*Brown's* case, supra); and that "where the existence or nonexistence of a particular fact is essential to the plaintiff's right of recovery, and where he makes no allegation with reference thereto, the inference is that the truth is against him" (*Trust Co. of Ga.* case, supra), how stands the case at bar? It appears from the allegations of fact of the petition that having been "informed" that "a party" was a passenger on one of the defendant's trains, the plaintiff went to the defendant's station at Newnan, Ga., to meet said train to see said "party," with a view of obtaining employment with West Point Iron Works. It does not appear that the plaintiff had made any engagement with said "party" to meet him at said train. It does not appear that said "party" knew that plaintiff intended to meet him there, or knew that the plaintiff was seeking employment. It does not appear that said "party" was on said train. It does not appear that the defendant was interested in any way in the business sought to be transacted at its train by the plaintiff. There is no allegation that said "party" expected to disembark from said train at Newnan; and the strong inference is that he was merely passing through that city. There is no allegation that the plaintiff went upon the defendant's premises to meet or assist any passenger, as was the situation in *A. & B. Ry. Co.* v. *Owens,* supra. There is no allegation that it was customary for persons to enter upon the defendant's premises for the purpose of transacting such business as he intended to transact there, and that such custom was acquiesced in by the defendant.

In short, as we view the case, the plaintiff entered upon the railroad's premises for the purpose of transacting his own private business, with which the railroad was not directly or indirectly concerned, and there was no semblance of any mutuality of interest between the two. If this conclusion is correct, the plaintiff was at most a mere licensee, and the defendant was not obligated to exercise ordinary care to prevent injuring the plaintiff. The defendant's duty towards the plaintiff was that his premises should not contain pitfalls, man-traps, and the like, and that it should not injure him wantonly or wilfully.

It will be observed that the petition nowhere alleges that the defendant had actual notice that the banana peel was on the walkway, or that it had been there such a length of time as would bind the defendant with implied notice of its presence. In this connection see *Boney* v. *Dublin,* 145 *Ga.* 339 (89 S. E. 197, Ann. Cas. 1918E, 176), and cit. In *Castleberry* v. *Fox,* 29 *Ga. App.* 35 (113 S. E. 110), it was held that a nonsuit was properly granted where a guest of a hotel slipped on a banana peel on a poorly lighted stairway in the hotel. In so far as the turning off of the lights is concerned, it will be noticed that it does not appear from the petition that any employee of defendant knew that the plaintiff was on the walkway when the lights were turned off. We think it is perfectly clear that the allegation that the defendant was grossly negligent in turning off the lights is a non sequitur.

Our conclusion is that it does not appear from the facts alleged in the petition that the defendant violated any duty owed by it to the plaintiff, and that the trial judge erred in overruling the motion to dismiss. In view of this holding, it is of course unnecessary to pass upon any question raised by the motion for a new trial.

*Judgment reversed. Broyles, C. J., and Hooper, J., concur.*