## WORD *v.* BOWEN.

No. 11089. FEBRUARY 19, 1936.

*Emmiett Smith* and *Leon Hood,* for plaintiff in error.

*Willis Smith,* contra.

GILBERT, Justice. H. L. Bowen filed suit against H. H. Word on two notes, and on September 23, 1933, a fi. fa. was issued under a general judgment and special lien, and was levied on certain described real property to which the recorded title was in Word. Mrs. Mary C. Word, wife of the defendant in fi. fa., filed a claim to the property. Upon the trial of the claim case the court directed a verdict for the plaintiff in fi. fa. The claimant filed a motion for a new trial upon the general grounds, and amended with a special ground that the court erred in directing the verdict, because the evidence was in certain material respects conflicting. The court overruled the motion, and the claimant excepted. In the brief of plaintiff in error only the special ground is insisted upon. The evidence shows substantially the following. H. H. Word, at a time when he was solvent, deeded the property in question to his wife. On February 12, 1927, she deeded the property back to him for the purpose of enabling him to borrow money from Mrs. Helen C. Boykin, with which to pay a note held by a Carrollton bank for collection. This deed was recorded on April 8, 1927. It was testified by the wife: "I did make a deed to my husband in 1927, so that he could get up the money loaned by Mrs. Boykin and pay the money, with the understanding that as soon as that was done I was to have the deed made back to me. . . He did not owe Mrs. Boykin anything before that, that I know of." It was admitted that in this transaction S. C. Boykin, an attorney, acted for his wife, Mrs. Helen C. Boykin, in arranging the loan from her, secured by a deed dated April 7, 1927, and cancelled of record on March 15, 1928. On April 18, 1927, shortly after his deed to Mrs. Boykin, Word executed a deed to his wife, subject to the security deed to Mrs. Boykin, the consideration being five dollars and love and affection. It was testified by Word, and not denied, that the nominal sum was not in fact paid. In order to pay Mrs. Boykin's loan after it became due, Word obtained a loan from Bowen, executing one promissory note for $600, and another for $500, the first being secured by a deed to the property involved in the present case. It appears that part payment was made on

each of the notes; and after the balance on each became due and was unpaid, Bowen brought suit and obtained judgment as hereinbefore mentioned. The record shows that the special lien was paid off after judgment; and therefore Bowen was left with a general judgment for the balance due on the $500 note, and with a levy on the property in question. Word's wife had never recorded the deed of April 18, 1927, until January 12, 1933, the same date on which Word was notified by Bowen of his intention to bring suit and claim ten per cent. attorney's fees.

As to the circumstances under which Bowen lent the money to Word on March 7, 1928, Bowen testified: "There wasn't anything said to me by Mr. Word, Judge Hood, or anybody else, about Mrs. Word having a deed to that property, or any equity in the property, at the time I let him have this money. They said, 'You can go to the records and see it is in my name.' He said, 'I will give you a deed to my lot on Dixie Street' [the property involved]. In reply to the question as to when I first had notice that she claimed to have a deed to it, I answer I had heard it about a year before I filed suit, but I went and looked on the record and couldn't find it. The first knowledge I had was when she had it recorded." Word, on the contrary, testified that at the time he borrowed the money from Bowen he told him that his wife had a deed to the property; that Bowen suggested that Word put a deed on the lot, but Word said he could not do so, because his wife wasn't willing, but that he would "make half on the farm and half on the city lot, and he agreed to do that before we made any papers." Judge Leon Hood testified that he knew about the transaction, and that "Mr. Bowen did know about Mrs. Word having a deed to this property. As to how he got his information, I answer that I told him for one, and Mr. Word had told him prior to that. I explained the situation to him, just how the matter stood, that Mrs. Word had conveyed the property to Mr. Word to get a loan from Mrs. Boykin, and he had to reconvey the property back to her, and the deed was not on record, however. We all talked about it." This testimony was denied by Bowen, who swore that Judge Hood "was down there on the lot with me on some other business. There was never anything said to me about Mrs. Word having a deed. I told Mr. Word, after the transaction, if he would give me the whole amount of the lot, the whole lot, I would give him all the time he wanted.

There was nothing said about his wife paying me at all. There was something mentioned about his wife after she had put the deed on record, I will tell you the truth, but not before." It was testified by Word that he had become insolvent.

It is contended by the plaintiff in error, (1) that the deed of February 12, 1927, from Mrs. Word to her husband was void for the reason that it was given for the purpose of paying a debt of her husband, and that she received no benefit therefrom; and (2) that the evidence was conflicting as to whether or not Bowen knew, at the time he made the loan to Word, that Mrs. Word held a deed to the property in question and that it had not been recorded; and therefore that an issue was made which should have been submitted to a jury, and the court erred in directing a verdict for the plaintiff in fi. fa. As to the first contention, while a wife may not sell her property to her husband without an order of court, she may make him a deed of gift. It is also true that she may, in the absence of fraud or collusion, borrow money with her property, or convey it to her husband to enable him to borrow money, provided that the transaction is not with the original creditor, and notwithstanding that the original creditor knows of such transaction. In the present case the deed of February 12, 1927, recites a consideration of love and affection, and, as shown by the uncontradicted evidence, was executed by Mrs. Word for the express purpose of providing her husband with security to obtain a loan from Mrs. Boykin. The proceeds were to be used to pay a note held by a Carrollton bank for a prior creditor of Word. Neither the creditor nor its agent had anything to do with the transaction. Therefore the deed of Mrs. Word conveyed an indefeasible title to her husband. It was recorded on April 8, 1927, before the time when Bowen extended credit to him.

On the question of the failure of Mrs. Word to record, until January 12, 1933, the deed executed by her husband under date of April 18, 1927, the following principles apply. It has been repeatedly held that where a wife who claims an equitable title to property knowingly permits her husband to retain the legal title and possession thereof, and credit is extended to him upon the faith of his apparent ownership, she will be estopped from asserting her secret equity as against a creditor who has no notice of such equity. *Roland* v. *Wilkinson-Bolton Co.*, 165 *Ga.* 194 (140 S. E.

368), and cit.; *Pilts* v. *Temple Banking Co.*, 169 *Ga.* 226 (150 S. E. 89) ; *Rowe* v. *Cole*, 171 *Ga.* 391, 394 (155 S. E. 473) ; *Morgan* v. *Greenberg*, 177 *Ga.* 233, 235 (170 S. E. 36). The rule applies as well to creditors who have not reduced their claims to judgment as to those who have. *Krueger* v. *MacDougald*, 148 *Ga.* 429 (96 S. E. 867) ; *Rowe* v. *Cole*, supra. In the circumstances of the cases above cited the burden would be upon the wife to show that the creditor had notice of her equity. "As the creditor was seeking to enforce a legal right arising from his judgment lien on this land while the title was in the husband, the burden of showing want of notice of the wife's secret equity was not on the creditor; and if such lien of the creditor could be defeated by the fact that he had notice of the wife's secret equity, the burden was on her to show that the creditor had such notice." *Orr Shoe Co.* v. *Lee*, 159 *Ga.* 523, 524 (126 S. E. 292), citing *Humphrey* v. *Copeland*, 54 *Ga.* 543. Under the evidence in this case Mrs. Word lived with her husband on the property in question, with the recorded title in him, and the possession was presumptively his. *Ryals* v. *Lindsay*, 176 *Ga.* 7 (3) (167 S. E. 284) ; *Federal Land Bank of Columbia* v. *Harris*, 176 *Ga.* 732 (2) (168 S. E. 778) ; *Morgan* v. *Greenberg*, supra. She knowingly permitted him to hold himself out, through his recorded deed, as the ostensible owner of the property, although she held at the same time a secret deed from her husband, under which she later attempted to set up title. As between her and her husband she had the legal title, but as far as the public was concerned the record showed him to be the owner of the property under his deed recorded on April 8, 1927. In the cases dealing with "secret equity" the claimant did not hold a paper title before the creditor extended credit to the defendant in fi. fa., but in equity was entitled to demand a written conveyance from the debtor. It may be urged that because the wife in the present case already had a deed before credit was extended to her husband, she could not be said to have only a "secret equity." We are of the opinion, however, that what she held was limited to that quantum of title. Her deed was subject to the loan of Mrs. Boykin, of which she was aware, and if the loan deed had been foreclosed because of non-payment, Mrs. Word would never have become the owner of an absolute title unless she bought in the property at the sale. Not having the unqualified title, and withhold-

ing from record such evidence of her encumbered title, we think she could not be said to have more than an equity; and furthermore, it was a secret equity. Being so, it could not, under the cases cited, be asserted against the creditor unless he had actual notice of it; the burden of showing such notice being upon the claimant. The evidence being conflicting on that feature, the case should have been submitted to a jury, and the court erred in directing the verdict, and in not granting a new trial.

But even if it be held that her deed, though unrecorded, gave her priority over a lien acquired by operation of law, in accordance with the Code of 1933, § 67-2501, and the cases dealing with that situation, there is another equitable principle which applies in the present case. As was said in *Ford* v. *Blackshear Mfg. Co.,* 140 *Ga.* 670, 674 (79 S. E. 576) : "But the competition is between a judgment creditor and one claiming legal title to the property, the latter holding under a deed executed by the defendant before judgment was rendered against him, the deed having been executed in recognition of a pre-existing equitable title in the grantee, arising from the fact that the money of the latter was paid for the land, while the legal title was taken in the name of the grantor. Cases in which the competition was of this character are : *Hunt* v. *Doyal,* 128 *Ga.* 416 (57 S. E. 489) ; *Bell* v. *Stewart,* 98 *Ga.* 669 (27 S. E. 153) ; *Dodd* v. *Bond,* 88 *Ga.* 355 (14 S. E. 581). Under the principle of the cases last cited, the property would not be subject to the judgment if there was nothing more than the extension of credit by the creditor on the faith that the property which was apparently that of the debtor really belonged to the wife. But if, among other things, it further appeared, in addition to the extension of credit under the circumstances enumerated, that the conduct of the person holding the equity tended to induce third persons erroneously to believe that the property was in fact the property of the husband, as it appeared to be, and the creditor, upon the faith of the property being that of the husband, and without notice of the outstanding secret equity, extended credit to the husband, and thereby suffered loss, the holder of the title would be estopped from asserting it against the judgment obtained by the creditor." In the present case it was the wife, and not another person, who put the title in the husband. Under a private agreement she was to receive back from him a reconveyance, subject to

a security deed which he executed to Mrs. Boykin to secure the loan which Mrs. Word knew he was going to obtain when she put the title in him. In the interval of ten days before she did receive the deed the husband was in a position to mislead the public as to ownership of the property. After she received the deed and did not record it until after credit had been extended to the husband, was her conduct such as to induce one to believe that the property, presumptively in his possession, was the property of the husband? And did Bowen in fact not receive actual notice of the outstanding deed of Mrs. Word, and, in the absence of such notice, did he extend credit to the husband upon the faith of his apparent ownership of the property and thereby suffer loss? Even under the view that Mrs. Word's deed was not a "secret equity" as contemplated in the cases cited in the foregoing part of this opinion, these are questions which should have been submitted to a jury. Therefore the court erred in directing the verdict and in not granting a new trial. *Judgment reversed. All the Justices concur.*