21153.   BREWTON *et al.* v. McLEOD, Executor, *et al.*

ARGUED FEBRUARY 13, 1961—DECIDED MARCH 13, 1961.

*Farkas, Landau & Davis, Robert R. Forrester, Seymour S. Owens,* for plaintiffs in error.

*Briggs Carson, Jr., Ben F. Johnson, Jr., Deputy Assistant-Attorney-General, Hugh Wright, Reinhardt & Ireland,* contra.

GRICE, Justice. Mrs. Estelle Stephens Brewton and S. A. Brewton, Jr., devisees under the will of George Stephens, probated in the Tift County Court of Ordinary on July 1, 1957, brought an equitable petition in the superior court of that county against B. H. McLeod, as executor of the will.

The petition alleged, among other things, the following: that, under Item V of Mr. Stephens' will, a trust fund was established for the testator's widow for life with remainder over to her daughter; that Item VII of the will gave directions for the sale of the testator's property "of every kind and description, and wherever located with the exception of the two houses on Chestnutt Avenue . . ." in order to obtain money for the trust fund and other bequests, and provided that the remainder of the estate after such bequests were paid was to be divided equally between plaintiffs; that, under Item VIII of the will plaintiffs were charged with the care of the testator's mother from the proceeds of the estate paid to them; that Item IX of the will directed that "the two houses located on Chestnutt Avenue" were to pass to the plaintiffs after the death of the testator's mother or in the event she predeceased him; and that the testator's mother did predecease the testator. Plaintiffs provided their own construction of each of the aforementioned Items of the will. The petition further alleged that the defendant executor had filed in the office of the Ordinary of Tift County application for leave to sell the two houses on Chestnutt Avenue; that the executor, on request from the plaintiffs, had wrongfully refused to assent to the devise made to them in Item IX of the will, and had advertised that real estate to be sold as the property of the estate of George Stephens "for the purpose of providing funds to carry out the bequest made in Item V of the will, and had completely ignored the right of your petitioners"; that the executor had, since his appointment, been in possession of the

Chestnutt Avenue houses and enjoyed the rents and profits therefrom, and petitioners are entitled to an accounting for such rents and profits; that, at the time Mr. Stephens made his will, he owned two houses and a vacant lot on Chestnutt Avenue, and that he later sold one of the houses and used the proceeds therefrom to build another on the same street, so that, at the time of his death he still owned "two houses on Chestnutt Avenue"; and that the executor now has on hand $10,957.65, after having received approximately $73,058.48 from sources exclusive of the Chestnutt Avenue houses, crediting $2,850 on the bequest contained in Item V of the will, and disbursing approximately $58,000 for debts and expenses. The petition then recited that all the debts of the estate have been paid except the legacies provided in Items V and IX of the will; that plaintiffs are ready and willing to pay and "now tender into court whatever amount shall be necessary as their portion of the costs, executor's fees and attorney's fees that may be chargeable against the property devised to them." Plaintiffs further alleged that they have no adequate remedy at law, and if the executor is allowed to sell said property and make a deed to the purchaser, the deed would constitute a cloud on petitioners' title, and multiplicity of suits would be required to determine the true owner of said property. They also alleged that to sell under the aforesaid conditions would be a disadvantage to the estate, in that it would freeze the bidding because the bidders would get a very doubtful title should the court hold that the executor had no right to sell the property. Plaintiffs amended their petition by adding the allegation that they "are in a position of uncertainty because of a controversy with the defendant Executor as to the meaning of the will and what interest the various legatees take. The Executor has advertised the property described in Item IX of the will for sale for the purpose of applying the proceeds to purposes other than delivery to the plaintiffs. In order to protect the rights of plaintiffs, plaintiffs must have the guidance of the court as to the proper construction of the will prior to the sale of said property and prior to the transfer of title and delivery of possession of said property to any party other than plaintiffs. Without such construction and guidance by the court plaintiffs' interest might reasonably be jeopardized."

Petitioners prayed: "That their rights under the will . . . be declared and in order to declare petitioners' rights it is necessary to construe said will"; that certain Items of the will be construed in accordance with their interpretations thereof, to wit: "(b) That it be determined that Item 5 of the will conveys only a life estate to the wife. (c) That . . . the property devised to petitioners cannot be sold for the purpose of obtaining funds to carry out Item 5 of the Will. (d) That . . . under Item 9 of the Will plaintiffs take said property free of any claims or the right of the Executor to use said property to carry out Item 5 of the Will. . . (f) That . . . the house located on Lot 7 in Block 196 passed to plaintiffs under the terms of the will or was substituted for the house located on the north half of Lot 11, in Block 197, which was sold by the Testator, the proceeds from which were used to construct the house located on Lot 7 in Block 196." Plaintiffs further prayed that the court fix attorney and executor fees and determine what portion, if any, of such fees should be borne by the plaintiffs; that "the executor be enjoined from conducting the sale of said property advertised to be sold. . ."; that "the court declare the rights of all of the parties hereto as provided under the will of George Stephens"; that provision be made after service for a hearing, with process; and for general relief.

The general demurrer of the defendant executor having been sustained on each and every ground, and the petition dismissed, plaintiffs assigned error on such ruling and brought their case to this court.

In a previous appearance here, these plaintiffs had filed a suit to enjoin the sale of this same property, to have an accounting to determine whether there were funds in the estate sufficient to pay the debts and make up the trust fund established under the will, to have an accounting as to the rents and profits, and to have the Chestnutt Avenue property conveyed to them. For reasons which will be referred to later, the judgment of the lower court in favor of the defendants was affirmed. *Brewton v. McLeod*, 216 Ga. 71 (114 S. E. 2d 409).

The conclusion we have to reach is whether the foregoing petition sets forth a cause of action for any of the relief which it

seeks. But the path is a thorny one indeed. First, does the petition allege a situation authorizing a declaratory judgment? If not, is this fatal? Is the petition maintainable as one primarily for construction of the will with an accounting and with injunction to preserve the status quo pending the construction and accounting? Imbedded in the latter question are further ones—whether any equitable relief may be had in view of available legal remedies, an order of the court of ordinary, and prior litigation.

■ Plaintiffs seek a declaratory judgment but are not entitled to it.

Their apprehension is as to the public sale of two tracts of real estate, the two houses on Chestnutt Avenue. Plaintiffs contend that the executor should assent to their devise, rather than sell the houses as he contends the will authorizes. After reciting their own interpretation of the various legacies and devises and the opposite stand of the executor, they plead the situation as follows: "Plaintiffs are in a position of uncertainty because of a controversy with the defendant Executor as to the meaning of the will and what interest the various legatees take. The Executor has advertised the property described in Item IX of the will for sale for the purpose of applying the proceeds to purposes other than delivery to the plaintiffs. In order to protect the rights of plaintiffs, plaintiffs must have the guidance of the court as to the proper construction of the will prior to the sale of said property and prior to the transfer of title and delivery of possession of said property to any party other than plaintiffs. Without such construction and guidance by the court plaintiffs' interest might reasonably be jeopardized."

Plaintiffs thus allege a controversy regarding construction of the will. They fear loss of their devise by this sale, but plaintiffs do not allege that an adjudication of their rights is necessary in order "to relieve them from the risk of taking any undirected action incident to [their] rights, which action without direction would jeopardize [their] interest," as required in *McCallum v. Quarles*, 214 Ga. 192 (104 S. E. 2d 105), and *Pinkard v. Mendel*, 216 Ga. 487 (117 S. E. 2d 336), citing *Rowan v. Herring*, 214 Ga. 370, 374 (105 S. E. 2d 29). They fail to allege

any need for direction regarding their future action with reference to the property, i.e., decisions as to use of the property or other conduct or acts that are incident to their ownership or possession of it. While they allege that, in order to protect their rights, they must have guidance as to construction prior to the sale and transfer of title of this property, whether they have rights which are subject to protection is a matter for determination in this very lawsuit. As stated in the *Rowan* case, supra, the provision of the Declaratory Judgment Act (*Code Ann.* § 110-1107 (c)), empowering a construction of wills, must be construed with section one of the act (*Code Ann.* § 110-1101). "Likewise, the rule as to the necessity for direction . . . applies in cases arising under *Code Ann.* § 110-1107 equally as well as to cases arising under section one of the act." *Rowan v. Herring,* supra. Without uncertainty, insecurity, or needed direction before taking some future action, the facts here are not sufficient for declaratory judgment.

(a) However, this failure to plead a cause of action for declaratory judgment in a petition brought squarely under the Declaratory Judgment Act is not fatal since the enactment of Ga. L. 1959, p. 236 (*Code Ann.* §§ 110-1101 et seq.). The 1959 statute, § 2 (*Code Ann.* § 110-1102 (a)), provides: "In all such cases [where declaratory judgment is sought], the court shall award to the petitioning party such relief as the pleadings and evidence may show him to be entitled, and the failure of such petition to state a cause of action for declaratory relief shall not affect the right of such party to any other relief, legal or equitable, to which he may be entitled."

■ We proceed now to consider the petition in the light of this recent statute. The prayers of the petition, as we interpret them, include construction. But if interpreted otherwise, the specific and general prayers authorize plaintiffs to the relief of construction. *Taylor v. Cureton,* 196 Ga. 28, 33 (25 S. E. 2d 815). The petition, then, is maintainable as one for construction of a will with an accounting and with injunction against sale of the property in order to preserve the status quo pending construction and accounting. Thus it should provide the plaintiffs with relief which is as effective as declaratory judgment.

Construction of wills is an ancient head of equity jurisdiction and has long been practiced in this State. Our *Code* § 37-403, provides: "Equity will not interfere with the regular administration of estates, except upon the application of the representative, either, first for construction and direction, second for marshaling the assets; or upon application of any person interested in the estate where there is danger of loss or other injury to his interests."

As this section indicates, a legatee or devisee cannot under normal circumstances maintain a petition for *mere construction* of a will, since that is the duty and prerogative of the executor. *Rainey v. Woodcock,* 211 Ga. 101 (84 S. E. 2d 41). Yet, the right of a legatee or devisee, under stated circumstances, to seek and obtain construction is recognized.

Illustrative of this right is *Barfield v. Aiken,* 209 Ga. 483 (74 S. E. 2d 100). A portion of its headnote 2 recites: ". . . where, as in this case, the plaintiff legatee sought by her petition and was entitled to injunctive relief against the executor to prevent a premature distribution of the assets of the estate prior to the death of the life beneficiary, and contrary to the directions contained in items 3 and 4 of the will, directing that the estate be held together so long as the named sister of the testator should live, and alleged that the executor had misconstrued the will as providing for a per capita distribution among the nieces and nephews of the testator, instead of a per stirpes distribution, to which she contended she was entitled—the petition showed such interest by the plaintiff in the estate and such necessity for construction of the will and direction by the court to protect her distributive share and legacy as would authorize her to bring the suit. *Code* § 37-403; *Darby v. Green,* 174 Ga. 146 (162 S. E. 493); *Morrison v. McFarland,* 147 Ga. 465 [94 S. E. 569]."

The plaintiffs in the case at bar have plead a like situation involving possible loss or injury to their interests, and entitling devisees to petition for and obtain construction. That the controversy is substantial, is manifest from the petition. An estate is in the final stages of administration. A public sale is sought by an executor. The dispute arises over whether two residential

tracts can, under proper construction of the will, be sold. The executor takes the position that the will authorizes and requires the sale in order to provide money for the legacy to the widow in Item V, which legacy she elected to take in lieu of dower and year's support. On the other hand, the plaintiffs contend that Item IX devises the property to them, that Item VII forbids sale of this property for the purpose of procuring money to satisfy the legacy to the widow, and that the controversy itself will sacrifice their interests because it will freeze the bidding.

The petition recites that construction is necessary to settle the controversy. Plaintiffs plead their own interpretation as to the relative priority, abatement, and other aspects of the various legacies and devises. When viewed as a whole, as to each paragraph, the petition alleges a cause of action for construction and accounting and for injunction to prevent loss or injury pending such relief.

With equity's aid, administration of George Stephens' estate should move to an orderly and early end. From all that appears, the time is now for the cutting of this Gordian knot.

(a) This relief is not to be denied because of the claim procedure provided by Code §§ 113-1801 and 113-1802. True, this statutory claim procedure was held an adequate remedy so as to deny equitable relief where plaintiff contended the property was his, but sought only injunction against an executor's sale of the property, not asking for any other equitable relief, such as construction. Hall v. Findley, 188 Ga. 487 (4 S. E. 2d 211); Scarbrough v. Cook, 208 Ga. 697 (69 S. E. 2d 201).

Neither is relief to be denied here because by utilizing the claim procedure plaintiffs may convert the proceeding into an equitable construction of the will by causing the claim papers to be filed in the court of ordinary, then having them transmitted to the superior court; and filing there an amendment in the nature of an ancillary petition alleging that, under the will they are entitled to the property which the executor refused to deliver to them. Roberts v. Wilson, 198 Ga. 428 (31 S. E. 2d 707).

But regardless of whether the claim remedy would have been adequate, equity jurisdiction attaches here because need of con-

struction underlies plaintiffs' case. This jurisdiction is shown by such decisions as *Matson v. Crowe,* 193 Ga. 578 (19 S. E. 2d 288), which is particularly applicable here.

In that case, as here, two devisees contended that they owned the land which the executor was about to sell pursuant to an order from the court of ordinary, and they sought injunction against the sale, together·with other relief to be referred to presently. This court ruled that, since the plaintiffs asserted title to the property, the claim procedure of *Code* § 113-1801 et seq. provided an adequate remedy, stressing that recovery of the property and partition, standing alone, would not provide any ground for equitable relief. It stated that "Other portions of the petition must be examined, therefore, in order to ascertain whether it contains allegations to show why equity should in the instant case grant this particular prayer, even though the same relief could be obtained in a court of law." The court ruled that the petition contained allegations sufficient to state a cause of action for an *accounting in equity.* What was said there is applicable here: " 'Equity seeks always to do complete justice; and hence, having the parties before the court rightfully, it will proceed to give full relief to all parties in reference to the subject matter of the suit, provided the court has jurisdiction for that purpose.' *Code* § 37-105. Since the complainants, under their allegations, are entitled in equity to an *accounting,* and the amount which by the accounting they seek to establish is due them, if at all, as remainder legatees under their mother's will, the right of the executrix to sell the property, the right of petitioners to have a partition, and their right to a judgment against the defendant personally, all relate to the same thing, to wit, the management by the defendant as trustee and executrix of property disposed of by their mother in her will. . . It being, as against the demurrer, a case where equity should assume jurisdiction in order to render an *accounting,* the court will in the *same suit* undertake to settle the *other* controversies growing out of the same subject-matter, and to grant the other relief indicated in the specific prayers relating to *injunction* and *partition, although* these *standing alone,* could *not* be granted." (Emphasis supplied.)

In the instant case the basis of equity jurisdiction is construction. Following the principles of the *Matson* case, supra, equity will *not* relegate these parties to the tortuous and circuitous procedure of (1) filing a claim in the court of ordinary under the statutory claim procedure, (2) then going with transmittal of the claim papers to the superior court, (3) then amending their pleadings to ask for equitable construction and an accounting, and thus (4) transforming the case into an equitable one in the Superior Court of Tift County, where the instant case already is, subject to this review. Instead, equity, already having jurisdiction for construction and already having all of the parties to the controversy before it, *will* give full relief to all parties as to the subject matter, and thus do complete justice in the equity suit *already* filed in Tift Superior Court.

(b) Neither is this relief unavailable because of proceedings in the court of ordinary relative to the sale sought to be enjoined here. As to that, the petition recites the following: that the executor has filed in that court application for leave to sell the property; that, after originally advertising said property to be sold on the first Tuesday in July, 1960, the executor has "since the filing of the original petition . . . caused to be inserted in the Tifton Gazette an advertisement for the sale of" this property on the first Tuesday in September, 1960, "and the same will be sold unless the defendant is restrained from so doing"; and that the defendant executor has advertised said property for sale "for the purpose of providing funds to carry out the bequest made in Item 5 of the will" (the legacy to the widow), and "for the purpose of applying the proceeds to purposes other than delivery to the plaintiffs."

Whether, pursuant to said application, an order authorizing such sale was in fact entered by the court of ordinary, does not appear. But those facts which do appear authorize the conclusion that an order was entered. The "elementary rule of construction, as applied to a pleading [is] that it is to be construed most strongly against the pleader, and that if an inference unfavorable to the right of a party claiming a right under such a pleading may be fairly drawn from the facts stated therein, such inference will prevail in determining the rights of the parties." *Krueger v. McDougald*, 148 Ga. 429 (96 S. E. 867).

It is well established that, in view of *Code Ann.* § 113-1706, "the order of a court of ordinary granting leave to sell is the judgment of a court of general jurisdiction; and, when granted according to law, it is binding on all persons interested in the estate. Such an order cannot be collaterally attacked in any court, except in the single instance where the order has been granted without personal notice to an heir from whom the representative of the estate seeks to recover land held adversely." Redfearn, Wills and Administration of Estates in Georgia (2nd Ed.), p. 480. Thus, it has been held repeatedly that allegations "to the effect that a sale by the executrix should be enjoined because there are in *fact* no debts of the estate, afford no reason for the grant of an injunction, since . . . the executrix had obtained from the ordinary an order permitting its sale for the purpose of paying the indebtedness claimed by the executrix to be due." (Emphasis supplied.) *Matson v. Crowe, supra.*

Furthermore, this court has declared that, "Where, after due notice, leave has been regularly granted by the court of ordinary to an administrator to sell realty of a decedent, equity will not restrain the sale by injunction at the instance of an heir *on account of reasons· which could have been as readily urged on a caveat to the application for leave to sell." Bailey v. Ross,* 68 Ga. 735. (Italics ours).

Also axiomatic is the principle embodied in *Code* § 110-709, that "the judgment of a court having no jurisdiction of the person or subject matter, or void for any other cause, is a mere nullity, and may be so held in any court when it becomes material to the interest of the parties to consider it."

The plaintiffs' position as to debts and distribution is not one of *fact* but one of *law.* They allege that "all of the debts of the Estate have been paid except the legacy provided for in Items 5 and 9 of the will." They also plead that the provisions of the will prevent the sale of the property in question to provide funds for the legacies above referred to. Whether plaintiffs are right or wrong depends upon a proper construction of the will.

Construction is not within the jurisdiction of the court of ordinary. Thus the plaintiffs could not have advanced in that

court their positions of law as to debts and distribution as recited above. Therefore, such an order by the ordinary, if in fact entered, would not preclude them from attacking that sale in the instant proceeding in equity, where construction is sought.

This limitation upon jurisdiction and its effect on such an order is well illustrated in *Fambrough v. Fambrough*, 209 Ga. 23 (70 S. E. 2d 468). There a son alleged that, in consideration of his staying on the farm and assisting both father and mother, the father agreed that, upon their deaths, the son would have the farm; but that, notwithstanding his own performance of that contract, the father made a will without providing for the son, and that the father's executor had obtained an order from the court of ordinary for the sale of such property. The son sought to enjoin the sale and to obtain specific paformance of the agreement. This court said: "The court of ordinary, in passing upon the application of an executor to sell a specific tract of land of his testator, has no jurisdiction to determine the rights of a son of the testator under an alleged contract between the son and the testator, wherein the son asserts an agreement whereby the testator agreed to devise the specific property to him in consideration of services rendered and to be rendered [citations]." The court also stated: "The pendency of the application of the executor to sell the land, the subject matter of the alleged contract, and the failure of the plaintiff to object to said proceeding and to an order directing the sale, did not operate to abate the equitable petition. . ."

A fortiori, the lack of jurisdiction to determine rights under a will and thus the lack of conclusiveness of the order of sale, as here.

(c) Nor is relief to be denied because of the prior but related litigation involving these same parties. There the plaintiffs sought to enjoin further proceedings as to the sale of this same property. This court affirmed denial of their relief, "since it does not appear from the evidence that [1] all the debts of the estate have been paid or that there are funds in the hands of the executor sufficient to pay the debts of the estate without selling this property, or [2] that the executor has assented to the devise or has been requested to assent and wrongfully refused, the plain-

tiffs failed to prove their right to any of the relief sought." *Brewton v. McLeod*, supra.

Subsequently, in the intant suit these plaintiffs brought themselves within the above-quoted holding by making allegations that all of the debts of the estate have been paid and also that the executor, upon request to assent to their devise, has wrongfully refused. At least those are their allegations based upon *their* construction of the will, which is the overriding question in this case.

In the forthcoming construction to determine whether plaintiffs may recover the real estate, the trial court will decide whether plaintiffs have made sufficient allegations as to payment of debts and wrongful refusal to assent, and also as to the priority and other aspects of the various legacies and devises.

3. It was error for the trial court to dismiss the petition on each and every ground of general demurrer. All grounds of the general demurrer except 1 (a) and 9 (e) were improperly sustained and, therefore, those portions of the judgment are reversed. Grounds 1(a) and 9(e), relating to declaratory judgment, were properly sustained and, therefore, those portions of the judgment are affirmed. *Peoples Loan Co. v. Allen*, 199 Ga. 537, 566 (34 S. E. 2d 811). The case is remanded for further proceedings in conformity with what is here ruled.

*Judgment reversed in part, affirmed in part. All the Justices concur.*